1

2

3    **IN THE UNITED STATES DISTRICT COURT FOR THE**

4    **DISTRICT OF MASSACHUSETTS**
      **CENTRAL DIVISION**

5

6    HEWLETT-PACKARD COMPANY and )
      HEWLETT-PACKARD                        )

7    DEVELOPMENT COMPANY, L.P.          )
                                                              )

8                        Plaintiffs,                    )
                                                              )

9              v.                                          )
                                                              )    Civil Action No.

10    ICL NETWORK SOLUTIONS (HK),     )
       LIMITED,                                        )

11                        Defendant.                  )    **05-40153 FDS**
                                                              )

12                                                          )

13                                                          )
                                                              )

14   _____

15    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
       **EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND**
       **ORDER TO SHOW CAUSE**

16   _____

17

18                                        **INTRODUCTION**

19            Defendant ICL Network Solutions (HK), Ltd. ("ICL ") is engaged in the marketing,

20    distribution, offering for sale of hard drives bearing counterfeit copies of Plaintiffs Hewlett-Packard

21    Company's and Hewlett-Packard Development Company, L.P.'s (collectively "Hewlett-Packard")

22    federally-registered HP, HP logo, HP INVENT logo, and/or HP INVENT trademarks.  These hard

23    drives are being offered for sale as genuine Hewlett-Packard goods even though they were not

24    manufactured, licensed, approved or otherwise authorized in any way by Hewlett-Packard.

25            Pursuant to the Lanham Act, Hewlett-Packard seeks a temporary restraining order and an

26    order to show cause why a preliminary injunction should not issue.  Unless immediately enjoined,

27    Defendant will continue to pass of its counterfeit hard drives as coming from or endorsed by

28    Hewlett-Packard, irreparably harming Hewlett-Packard and the public in the process.  Specifically,

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

approximately $139,000 worth of counterfeit hard drives bearing Hewlett-Packard's trademarks, consigned by ICL to a freight forwarder in Auburn, Massachusetts are currently sitting in a warehouse in Auburn.  By this application, Hewlett-Packard seeks to prevent ICL and its agents (including the freight forwarder) from selling or distributing these units pending the resolution of this action against ICL.

## STATEMENT OF FACTS

### A.    Hewlett-Packard And Its Trademarks.

Hewlett-Packard is an internationally known company specializing in computer hardware and software, printers, electronics, and other related goods and services.  The company, founded in 1939, now has tens of thousands employees worldwide with sales and support offices and distributorships worldwide in more than 100 countries.  Complaint For Injunctive Relief And Damages ("Complaint") ¶8.

Hewlett-Packard owns several United States Trademark Registrations for the marks HP, HP logo, and HP INVENT logo, including *inter alia*, HP (U.S. Registration No.'s 1116835 and 1840215); HP AND DESIGN (ROUNDED RECTANGLE) (U.S. Registration No. 1842724); and HP INVENT & DESIGN (U.S. Registration No. 2474422) (collectively, "HP Marks").  *Id.* ¶9 & Ex. A. These marks have been in use for many years, and the HP Marks are famous throughout the world.  *Id.*  As the registrant of the above registrations, Hewlett-Packard has the exclusive, nationwide right to use and to license the use of the HP Marks.  *Id.*

For many years, Hewlett-Packard has continuously used the HP Marks in connection with the promotion, advertising, and sale of Hewlett-Packard hard drives.  *Id.* ¶10.  Hewlett-Packard has invested a substantial effort over a long period of time, including the expenditure of substantial dollars, to develop goodwill in the HP Marks to cause consumers throughout the United States and the world to recognize these marks as distinctly designating Hewlett-Packard goods and services.

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

*Id.* Hewlett-Packard also provides its customers with products and services that meet well-known high standards for performance and reliability. *Id.*

As a result of the lengthy and substantial use of the HP Marks, these marks are extremely strong and widely recognized by computer users and consumers as representing the goods and services offered by Hewlett-Packard. *Id.* ¶11. The HP Marks have come to be known by actual and potential customers as marks owned by and associated exclusively with Hewlett-Packard, and as symbolizing the exceptional goods designed, manufactured, distributed, marketed, and sold by or on behalf of Hewlett-Packard. *Id.* The HP Marks are famous and strong marks, and they have secondary meaning. *Id.* Due to the high quality of Hewlett-Packard's goods and services, the HP Marks are seen as representative of quality, reliability and consistency, and they have become an extremely valuable asset carrying substantial goodwill. *Id.*

**B.    Defendants And Their Counterfeiting And Infringing Uses.**

Defendant ICL Network Solutions, (HK), Ltd. ("ICL"), is a Hong Kong company, which holds itself out as an "Independent Distributor for various Networking and Storage Products," and specifically offers for sale Hewlett-Packard products. Affidavit of Jin H. Kim ("Kim Aff.") ¶2. ICL promotes itself as a "global company" with "global reach": "Having situated operations in major business hubs primary of which [sic], including the UK and the United States, the company operates virtually through all time zones and affords its customers and expansive sourcing reach for their requirements on a worldwide scale." *Id.* Defendant is marketing, distributing and offering for sale counterfeit hard drives with labels that bear HP Marks and other counterfeit indicia but are not genuine Hewlett-Packard products. Affidavit of Margie D. Terrell ("Terrell Aff.") ¶¶3-6; Affidavit of Nick Kostoff ("Kostoff Aff.") ¶¶3-7.

In late August, 2005, Hewlett-Packard became aware that ICL was offering for sale hard drives bearing counterfeit HP Marks when a potential customer of ICLs contacted Hewlett-Packard.

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

Affidavit of Lisa McPherson ("McPherson Aff.") ¶3. ICL had contacted the potential customer, inquiring about his interest in purchasing two different models of Hewlett-Packard hard drives (HP Part Nos. 286776-B22 and 286778-B22) for $200 and $330, respectively. McPherson Aff. *Id.* The list prices for Part Nos. 286776-B22 and 286778-B22 are $299 and $529, respectively. *Id.* The potential customer was informed by ICL that it had available for sale 180 units of 286776-B2 and 175 units of 286778-B22 and that those units were being held by Worcester County Air Freight, Inc., a freight forwarder, at 135 Southbridge Street, Auburn, Massachusetts. *Id.*

At the request of the potential customer, ICL sent via Federal Express samples of the hard drives for the customer's inspection, two of which (one of each model) the customer forwarded to Hewlett-Packard. *Id.* Subsequent analysis by Hewlett-Packard confirmed that the sample Part No. 286776-B22 and Part No. 286778-B22 sent to the potential customer by ICL were counterfeit Hewlett-Packard hard drives, as described in greater detail below.

Purported "Hewlett-Packard" Part No. 286776-B22

Analysis by Hewlett-Packard revealed that the sample hard drive represented by ICL as HP Part No. 286776-B22 is an IBM drive, contrary to the product label on the drive indicating it is a Seagate drive. Kostoff Aff. ¶6. The "mode pages" of the sample are missing or inconsistent with HP specifications, and the sample is missing other Hewlett-Packard specific vital product data pages. *Id.* The sample is only capable of operating at a data transfer rate of up to 160 megabytes per second, not 320 drive megabytes per second as indicated by its label. The sample also is a 10k RPM, *not* a 15k RPM, as indicated on the label. *Id.* Finally, the security label on the drive does not have the covert security features that are required on authentic Hewlett-Packard products. Terrell Aff. ¶4.

Purported "Hewlett-Packard" Part No. 286778-B22

Analysis by Hewlett-Packard revealed that the sample hard drive represented by ICL as HP Part No. 286778-B22 is a Maxtor drive. Kostoff *Id.* ¶7. The sample lacks HP specific "mode

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

-4-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

pages," and other Hewlett-Packard specific vital product data pages. *Id.* The lack of proper mode pages and HP specific vital product data pages confirm that this drive is not a genuine Hewlett-Packard drive. *Id.* Although the label indicates that the sample drive is a 15K drive, physical examination reveals that it is in fact a 10k drive. *Id.* Finally, the security label on the drive does not have the covert security features that are required on authentic Hewlett-Packard products. Terrell Aff. ¶4.

On August 30, 2005, an employee of Hewlett-Packard inspected the ICL hard drive units being held at the premises of Worcester County Air Freight, Inc. ("WCAF") *Id.* ¶5. The Hewlett-Packard employee examined 149 36GB hard drives (HP Part No. 286776-B22) bearing HP Marks and determined that all of them were counterfeit, based on the following indicia. *Id.* The security labels on the units bore the wrong color-shifting ink, which is an ordinary feature found on genuine security labels on legitimate Hewlett-Packard goods. *Id.* The color-shifting on the security labels was also improperly positioned, compared to authentic security labels. *Id.* Also, the security labels did not have the covert security features that are required on authentic Hewlett-Packard products. *Id.* Finally, none of the part numbers scanned from the boxes indicated the correct part number. *Id.* Human readable information on the boxes indicated they were a part number 286776-B22 hard drive, which is a 36GB 15k U320 drive, but the barcode number scanned as a part number 286713-B22 hard drive, which is a 36GB 10k U320 drive. *Id.*

On the same day, the Hewlett-Packard employee also examined 56 72GB hard drives (HP Part No. 286778-B22) bearing HP Marks (out of a total of approximately 180 such drives present at the site). *Id.* ¶6. All of these 56 units were counterfeit, based on the following indicia. *Id.* The security labels on the units bore the wrong color-shifting ink, which is an ordinary feature found on genuine security labels on legitimate Hewlett-Packard goods. *Id.* Also, very few of these drives had a readable barcode on the security label. *Id.* Finally, the security labels did not have the covert security features that are required on authentic Hewlett-Packard products. *Id.*

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

Hewlett-Packard believes that if Defendant is not enjoined immediately, the approximately 329 hard drives currently at WCAF will be sold to unsuspecting customers of ICL as genuine Hewlett-Packard hard drives, as ICL already has attempted to do with the customer who forwarded the ICL samples to Hewlett-Packard. Nor is this the first time ICL has trafficked in counterfeit Hewlett-Packard products. Last year, Hewlett-Packard filed suit in the Central District of California (Western Division) against third party distributors. In that case, which was settled, ICL had sold 120 units of purportedly Hewlett-Packard mini gigabit interface converters to the distributors in 2003 and 2004, a number of which were revealed to be counterfeit upon analysis by Hewlett-Packard. Kim Aff. ¶3. Accordingly, Hewlett-Packard seeks immediate relief as provided by the Lanham Act, in order to bring a halt to Defendant's counterfeiting activities.

## ARGUMENT

### I.

### PRELIMINARY RELIEF MUST BE GRANTED TO HALT IMMEDIATELY DEFENDANT'S INFRINGEMENT OF HEWLETT-PACKARD'S TRADEMARKS.

Hewlett-Packard seeks an immediate temporary restraining order and an order to show cause why a preliminary injunction should not issue against Defendant ICL's continued counterfeiting activities, including the advertising, sale and/or distribution of non-Hewlett-Packard hard drives bearing identical copies of Hewlett-Packard's registered trademarks. If Defendant is permitted to continue its use of the HP Marks during the pendency of this action, Hewlett-Packard will suffer irreparable injury.

A District Court may grant preliminary injunction once a party demonstrates "(1) that it will suffer irreparable injury if the injunction is not granted; (2) that any such injury outweighs any harm which granting the injunction would cause the defendant; (3) a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction."

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

-6-

*Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 544 (1st Cir. 1995) (citing *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 220 (1st Cir. 1989)).  Here, Hewlett-Packard can readily prove its entitlement to the preliminary relief it seeks.

A.    **Unless Defendant Is Enjoined Immediately, Hewlett-Packard Will Suffer Further Irreparable Injury.**

To protect the legitimate interests of trademark holders, the courts have created a legal presumption of irreparable harm in trademark infringement cases.  Thus, once Hewlett-Packard has made a showing of likelihood of confusion, the legal presumption arises that Hewlett-Packard will suffer irreparable harm unless Defendant is enjoined.  *See Camel Hair & Cashmere Inst. of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 14-15 (1st Cir. 1986) (adopting presumption of irreparable injury upon finding of likelihood of success on merits in trademark infringement cases); *Calamari Fisheries, Inc. v. Village Catch, Inc.*, 698 F. Supp. 994, 1013 (D. Mass. 1988) (holding that in the trademark context, "irreparable harm may be shown even in the absence of actual injury to plaintiff's business based on plaintiff's demonstration of a likelihood of success on the merits on its claim").

As discussed in greater detail below, Defendant are advertising, distributing and offering for sale hard drives bearing identical copies of Hewlett-Packard's registered trademarks, making confusion a virtual certainty.  Therefore, Hewlett-Packard has made the requisite showing of irreparable injury.

B.    **Hewlett-Packard's Injury Outweighs Any Harm Which Granting The Injunction Will Cause The Defendant.**

At this moment, Defendant's freight forwarding agent, WCAF, has approximately 329 counterfeit hard drives waiting to be moved at the direction of Defendant.  Terrell Aff. ¶¶5,6.  If ICL learns that it has been caught trafficking in counterfeit goods, these hard drives could be sold in bulk

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

-7-

1
2
3
to another distributor or otherwise moved to a different location very quickly.  McPherson Aff. ¶4.
4
Unless a distributor of counterfeit goods is not prevented from selling or otherwise distributing
5
counterfeit goods, the goods disappear.  *Id.*  The sale of counterfeit goods does great harm to
6
Hewlett-Packard as legitimate sales are lost and customers blame Hewlett-Packard for inferior goods
7
sold under its label.  *Id.*
8
    The injury to Defendant should this Court grant the preliminary relief, on the other hand, is
9
slight—Defendant only will be temporarily deprived of the opportunity to sell the hard drives until
10
the hearing on the order to show cause.[1]
11
12
    **C.    Hewlett-Packard Will Prevail On The Merits.**
13
    Hewlett-Packard will very likely prevail on the merits of its trademark infringement claim
14
against Defendant.  To do so, Hewlett-Packard need only show (1) that it has valid, protectable
15
trademark interests in its marks, and (2) that Defendant's use is likely to confuse the public, thereby
16
harming the plaintiff.  *See DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir. 1992).
17
18
    **1.    Hewlett-Packard's Marks Are Valid And Protectable.**
19
    As stated above, Hewlett-Packard has multiple federal trademark registrations for the marks
20
HP, the HP logo, and the HP INVENT logo, including registrations encompassing goods such as
21
computer hard drives.  Complaint ¶9 & Ex. A.  These federal registrations are prima facie evidence
22
of the validity of the HP Marks.  15 U.S.C. §1115(a).  There should be no question as to the validity
23
and protectability of the HP Marks.
24
25
26
27    [1]If it is determined that the proposed TRO would create storage space problems for WACF, Hewlett-Packard is willing to bear the cost of having the counterfeit hard drives transferred to and stored with a third-party.
28

1

2

3      **2.    Defendant's Use of Identical Copies of Hewlett-Packard's Marks Makes**
       **Confusion Inevitable.**

4

       Likelihood of confusion is the central issue in Hewlett-Packard's claims for trademark

5

infringement. *See Purolator, Inc. v. EFRA Distribs., Inc.*, 687 F.2d 554, 559 (1st Cir. 1982)

6

(likelihood of confusion is the "key element in any infringement action"). This is true both for the

7

federal counts under 15 U.S.C. Section 1114(1) and 15 U.S.C. Section 1125(a) and for the state

8

claim. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486-87 (1st

9

Cir.1981). In the present case, Defendant's use of identical copies of the HP Marks on the hard

10

drives makes confusion not only likely, but plainly inevitable.

11

       In the First Circuit, likelihood of confusion is tested using eight factors:  (1) the similarity of

12

the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade;

13

(4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6)

14

evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of

15

the plaintiff's mark. *See Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st

16

Cir.1987); *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.* 718 F.2d 1201, 1205 (1st Cir.

17

1983); *Pignons*, 657 F.2d at 487.

18

       Analysis of these factors indicates that they overwhelmingly favor Hewlett-Packard.  For

19

example,

20

           • Defendant is using *identical*, counterfeit copies of the HP Marks.  Complaint ¶¶13-16.

21
           • Defendant is using these counterfeit copies of the HP Marks on *identical* goods for

22             which Hewlett-Packard has registered and is using the HP Marks.  *Id.*

23
           • Defendant is using these counterfeit copies of the HP Marks on identical goods in

24             order to pass off its own hard drives to consumers as Hewlett-Packard hard drives.  *Id.*

25             ¶¶16-17

26
           • The HP Marks are federally registered, have been in use for a substantial period of

27             time and are both arbitrary and highly distinctive.  Complaint ¶¶9-11 & Ex. A.

28

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Given that Defendant is using exact copies of the HP Marks on identical goods in competition with genuine Hewlett-Packard hard drives, the applicable factors weigh overwhelmingly in favor of Hewlett-Packard. *See, e.g., Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 35 (1st Cir. 1989) (when a party "intentionally uses another's mark as a means of establishing a link in consumers' minds with the other's enterprise, and directly profits from that link, there is an unmistakable aura of deception"); *Polo Fashions, Inc. v. Fernandez,* 655 F. Supp. 664, 668-69 (D.P.R. 1987) (holding where assessing "likely to cause confusion, we can take into consideration whether the combination of words, devices or symbols have been used to deceive the public into believing that the goods of the infringer originated with plaintiff"). Indeed, Defendant's use is, by its very nature, likely to cause confusion.

### D.    Immediate Injunctive Relief Is Necessary to Protect The Public.

As the First Circuit has noted, "[t]rademark infringement and unfair competition laws exist largely to protect the public from confusion [about] the actual source of goods or services." *International Ass'n Of Machinists & Aerospace Workers, AFL-CIO, v. Winship Green Nursing Ctr.,* 103 F.3d 196, 200 (1st Cir. 1996); *see also Keds Corp. v. Renee Int'l Trading Corp.,* 888 F.2d 215, 218 (1st Cir. 1989) ("the injury in an infringement case is two-fold: to the trademark owner through loss of good will and presumably profits and to the public because of confusion caused by the similar marks").

Accordingly, both Hewlett-Packard *and* the public will be irreparably injured by Defendant's continued counterfeiting activities. Immediate injunctive relief is necessary to put a stop to this harm.

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

1

2

3

**CONCLUSION**

4

For all of the foregoing reasons, the Court should grant Hewlett-Packard's Ex Parte

5

Application for Temporary Restraining Order and Order To Show Cause.

6

7                                                    Respectfully submitted,

Dated: September 1 , 2005

8

9                                        Louis M. Ciavarra  (BBO#546481)
                                         Bowditch & Dewey, LLP
                                         311 Main Street
10                                       P.O. Box 15156
                                         Worcester, MA 01615-0156
11                                       Telephone: (508) 926-3408
                                         Facsimile:   (508) 929-3011
12

13                                       By: _____
                                                  Louis M. Ciavarra
14

15                                       Attorneys for Plaintiffs
                                         HEWLETT-PACKARD COMPANY and HEWLETT-
                                         PACKARD DEVELOPMENT COMPANY, L.P.
16

17                                       Of Counsel:
                                         MARTIN R. GLICK
18                                       SIMON J. FRANKEL
                                         JIN KIM
19                                       SHANNON SCOTT
                                         HOWARD RICE NEMEROVSKI CANADY
                                              FALK & RABKIN
20

21

22

23

24

25

26

27

28

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

1
2
3
## TABLE OF CONTENTS

4  INTRODUCTION ..................................................................................................... 0

5  INTRODUCTION ..................................................................................................... 1

6  STATEMENT OF FACTS ........................................................................................ 2

7       A.    Hewlett-Packard And Its Trademarks. ...................................... 2

8       B.    Defendants And Their Counterfeiting And Infringing Uses. .......... 3

9  ARGUMENT ........................................................................................................... 6

10    I.    PRELIMINARY RELIEF MUST BE GRANTED TO HALT
11        IMMEDIATELY DEFENDANT'S INFRINGEMENT OF HEWLETT-
          PACKARD'S TRADEMARKS. ....................................................... 6

12      A.    Unless Defendant Is Enjoined Immediately, Hewlett-Packard Will
13          Suffer Further Irreparable Injury. .............................................. 7

14      B.    Hewlett-Packard's Injury Outweighs Any Harm Which Granting
            The Injunction Will Cause The Defendant. .................................. 7

15      C.    Hewlett-Packard Will Prevail On The Merits. ............................. 8

16         1.    Hewlett-Packard's Marks Are Valid And Protectable. .......... 8

17         2.    Defendant's Use of Identical Copies of Hewlett-Packard's
18             Marks Makes Confusion Inevitable. ...................................... 9

19      D.    Immediate Injunctive Relief Is Necessary to Protect The Public. ...... 10

20 CONCLUSION ........................................................................................................ 11

21
22
23
24
25
26
27
28

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}

1

2

3

**Cases**

4

*Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.* 718 F.2d 1201 (1st Cir.
1983) ............................................................................................................... 9

*Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22 (1st Cir. 1989) .................... 10

*Calamari Fisheries, Inc. v. Village Catch, Inc.*, 698 F. Supp. 994 (D. Mass. 1988) ... 7

*Camel Hair & Cashmere Inst. of America, Inc. v. Associated Dry Goods Corp.*, 799
F.2d 6 (1st Cir. 1986) ...................................................................................... 7

*DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602 (1st Cir. 1992) ......................... 8

*Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542 (1st Cir. 1995) ..... 7

*International Ass'n Of Machinists & Aerospace Workers, AFL-CIO, v. Winship
Green Nursing Ctr.*, 103 F.3d 196 (1st Cir. 1996) ........................................ 10

*Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215 (1st Cir. 1989) ...... 7, 10

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482 (1st
Cir.1981) ......................................................................................................... 9

*Polo Fashions, Inc. v. Fernandez*, 655 F. Supp. 664 (D.P.R. 1987) ............ 10

*Purolator, Inc. v. EFRA Distribs., Inc.*, 687 F.2d 554 (1st Cir. 1982) ......... 9

*Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812 (1st Cir.1987) ... 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

**Statutes**

20

15 U.S.C. §1115(a) ......................................................................................... 8

21

22

23

24

25

26

27

28

{J:\CLIENTS\LIT\240393\0999\00580870.DOC;1}