**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | | |
|---|---|---|
| HEWLETT-PACKARD COMPANY, and HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ICL NETWORK SOLUTIONS (HK), LTD and C2C TECHNOLOGY, INCORPORATED, | ) ) ) ) | Civil Action No. 05-40153 FDS |
| Defendants. | ) ) ) ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT ICL NETWORK SOLUTIONS (HK), LTD.'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

Page(s)

INTRODUCTION .......................................................................... 1

STATEMENT OF FACTS ............................................................... 2

    A.   ICL's Website And The Self-Proclaimed Global Reach Of Its
        Business. ....................................................................... 2

    B.   ICL's Repeated Solicitations Of, And Substantial Sales To,
        C2C Technology In Massachusetts. ............................... 3

    C.   ICL's Sales Of Counterfeit Hewlett-Packard Hard Drives To
        C2C And ICL's Subsequent Efforts To Sell Those Hard Drives
        To A California Company. ........................................... 4

ARGUMENT ............................................................................... 6

  I.   THIS COURT HAS PERSONAL JURISDICTION OVER ICL
      UNDER MASSACHUSETTS' LONG-ARM STATUTE BASED ON
      ICL'S ACTS CAUSING TORTIOUS INJURY HERE AND ITS
      TRANSACTION OF BUSINESS IN THE COMMONWEALTH. ........ 7

    A.   ICL Has Transacted Business In This Commonwealth Under
        Section 3(a). ................................................................. 7

    B.   ICL Has Engaged In Conduct Causing Tortious Injury In This
        Commonwealth Under Section 3(d). ............................. 8

        a.   ICL's Sale Of Counterfeit Hewlett-Packard Hard
            Drives Into Massachusetts Caused Tortious Injury
            In This Commonwealth. ...................................... 9

        b.   ICL Both Regularly Solicits Business in the
            Commonwealth And Derives Substantial Revenue
            From Goods Delivered Into Massachusetts. ........ 10

            (1)   ICL Has Derived Substantial Revenues From
                Sales Into Massachusetts. .......................... 10

            (2)   ICL Has Regularly Solicited Business In
                Massachusetts. .......................................... 10

    C.   Where Title To Goods Sold By ICL May Have Passed Is
        Irrelevant To The Court's Exercise Of Personal Jurisdiction. .... 11

# TABLE OF CONTENTS

Page(s)

D.    Exercise Of Personal Jurisdiction Over ICL Easily Comports With Due Process Standards. ... 12

1.    Hewlett-Packard's Claims Arise Directly Out of ICL's Sale of Goods to A Customer Located in Massachusetts. ... 12

2.    ICL's Activities Directed At Massachusetts Constitute Sufficient Purposeful Availment. ... 12

3.    ICL Does Not Compellingly Establish That Exercising Personal Jurisdiction On This Record Would Be Unreasonable. ... 14

a.    The Burden of Appearance. ... 15

b.    Massachusetts' Interest In This Lawsuit. ... 16

c.    Hewlett-Packard's Interest In Obtaining Convenient and Effective Relief. ... 16

d.    The Administration of Justice. ... 17

e.    Substantive Social Policies. ... 17

II.    ALTERNATIVELY, THE COURT HAS JURISDICTION OVER ICL UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(K)(2) BASED ON ICL'S CONTACTS WITH THE UNITED STATES AS A WHOLE. ... 18

A.    Hewlett-Packard Satisfies the Prima Facie Showing Under Rule 4(k)(2). ... 18

B.    ICL Cannot Rebut Hewlett-Packard's Prima Facie Case for the Application of Rule 4(k)(2). ... 19

CONCLUSION ... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)                                  13, 15

*Benitez-Allende v. Alcan Aluminio Do Brasil, S.A.*, 857 F.2d 26 (1st Cir. 1988)                11, 14

*Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671 (1st Cir. 1992)                                          7

*Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F. 2d 928 (1st Cir. 1985)                            7, 8

*Buckeye Assocs., Ltd. v. Fila Sports, Inc.*,  616 F. Supp. 1484 (D. Mass. 1985)                  9, 12

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)                                               14

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.*,
     295 F. 3d 59 (1st Cir. 2002)                                                                    14

*Digital Equip. Corp. v. AltaVista Tech., Inc.*, 960 F. Supp. 456 (D. Mass. 1997)               16, 17

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002)                                          15, 16

*Engine Specialties, Inc. v. Bombardier Ltd.*, 454 F.2d 527 (1st Cir. 1972)                          9

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 975 F. Supp. 30 (D. Mass.
     1997)                                                                                         6, 7 12

*Gary Scott Int'l, Inc. v. Baroudi*, 981 F. Supp. 714 (D. Mass. 1997)                               12

*Graduate Mgt. Admission Council v. Raju,* 241 F. Supp. 2d 589 (E.D. Va. 2003)                  19, 20

*Gulf Consol. Servs., Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071 (5th Cir.
     1990)                                                                                           16

*Haddad v. Taylor*, 588 N.E.2d 1375 (1992)                                                           8

*Hahn v. Vermont Law Sch.*, 698 F.2d 48 (1st Cir. 1983)                                              8

*Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34 (D. Mass. 1997)               10, 11, 15, 16, 17

*In re Lupron Mktg. & Sales Practices Litig.*, 245 F. Supp. 2d 280 (D. Mass.
     2003)                                                                                          6, 7

*Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215 (1st Cir. 1989)               9, 10, 11, 14

# TABLE OF AUTHORITIES

Page(s)

*Mark v. Obear & Sons, Inc.*, 313 F. Supp. 373 (D. Mass. 1970)    10

*Merced v. JLG Indus., Inc.*, 170 F. Supp. 2d 65 (D. Mass. 2001)    12, 13, 17

*Nowak v. Tak How Invests.*, 94 F.3d 708 (1st Cir. 1996)    14, 15, 17

*Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994)    15

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995)    13, 17

*Tatro v. Manor Care, Inc.*, 625 N.E. 2d 549 (1994)    8, 13

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994)    13, 15, 16

*United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 987 F.2d 39
    (1st Cir. 1993)    15

*United Elec., Radio, & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080
    (1st Cir. 1992)    14

*United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30 (1st Cir. 1999)    18, 19, 20

*Vencedor Mfg. Co. v. Gougler Indus., Inc.*, 557 F.2d 886 (1st Cir. 1977)    11, 12,14

*Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102 (D.
    Mass. 2003)    6, 7, 8

**Statutes**

Fed R. Civ. P. 4(k)2    7, 18, 19

15 Mass. Gen. L. ch. 223A
    §3    7
    §3(a)    7, 8
    §3(d)    8, 9, 10

# INTRODUCTION

In its motion to dismiss, Defendant ICL Network Solutions (HK), Ltd. ("Defendant" or "ICL") contends that this Court does not have personal jurisdiction over ICL because it is merely a Hong Kong-based company with no significant ties to Massachusetts. The facts—all omitted from ICL's motion papers—tell a different story. Affidavits now before this Court establish that:

- ICL presents itself on its website as a global distributor of various networking and computer storage products;
- ICL actively solicited business from C2C Technology ("C2C"), a business located in Massachusetts;
- ICL engaged in hundreds of telephone and electronic communications with C2C over nine months as part of a concerted effort to sell computer products to C2C, knowing that C2C would seek to resell some of these products in Massachusetts;
- ICL sent eleven different shipments of computer products bearing Hewlett-Packard trademarks (including the counterfeit hard drives at issue) to C2C in Massachusetts, for which ICL was paid a total of approximately $295,000; and
- ICL sought to find a new purchaser for the hard drives at issue (when C2C tried to return them), even soliciting a California company to come to Massachusetts to inspect the units here.

In particular, ICL shipped hundreds of counterfeit Hewlett-Packard hard drives, worth tens of thousands of dollars, into Massachusetts. This action alone—purposefully directed at, and causing tortious injury in, Massachusetts—places ICL well within the Massachusetts long-arm statute and makes the exercise of jurisdiction over ICL entirely reasonable.

Under the Massachusetts long-arm statute, ICL is properly subject to jurisdiction here if it has transacted any business in the Commonwealth or if it has engaged in conduct elsewhere causing tortuous injury here. ICL has done both. By extensively soliciting C2C as a customer, engaging in numerous transactions with C2C and sending multiple shipments of goods to C2C in Massachusetts, ICL has transacted business here by any standard. And by shipping into Massachusetts hundreds of hard drives bearing counterfeit Hewlett-Packard trademarks, ICL has

1

engaged in conduct causing tortious injury here under the Lanham Act. Nor can ICL claim that the exercise of jurisdiction over it would be unreasonable under the due process clause. ICL chose to solicit a Massachusetts company, to engage in extensive negotiations with that company over many months, and to send eleven shipments of computer products into the Commonwealth (for which ICL received payment from Massachusetts). Having engaged extensively in the privilege of doing business in Massachusetts, ICL can hardly contend it is unreasonable that the company be subject to Massachusetts law. ICL's motion should be denied.

## STATEMENT OF FACTS

Defendant ICL Network Solutions, (HK), Ltd. ("ICL"), is a Hong Kong company that holds itself out as an "independent distributor for various networking and storage products" and specifically offers for sale Hewlett-Packard products. Declaration of Irene Chua ("Chua Decl.") ¶¶3-4; Affidavit of Jin H. Kim in Support of Plaintiffs' Ex Parte Application for Temporary Restraining Order and Order to Show Cause ("Kim Aff. ISO TRO") (filed September 1, 2005) ¶2. ICL was previously named Integrated Compusystems (HK), Ltd.; it changed its name to "ICL Network Solutions, (HK), Ltd." as of June 1, 2004 and retained the same address. Affidavit of Stuart Jeffries in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Jeffries Aff. ") ¶3 & Ex. A. Thereafter, Don Mabalot, the CFO and Operations Head of ICL, used the name ICL and Integrated Compusystems interchangeably. Affidavit of Bryan Phillips in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Phillips Aff.") ¶¶4, 6.

### A.    ICL's Website And The Self-Proclaimed Global Reach Of Its Business.

ICL operates a website, located at www.iclns.com, which is available to internet users across the United States, including users in Massachusetts and California, and throughout the world. Kim Affidavit in ISO Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Kim Aff. ISO Opp.") ¶2 & Ex. A. No password or registration is required to access ICL's website. *Id.* ¶2. Through its website, ICL advertises for sale purportedly Hewlett-Packard products, including the same models of the hard drives that are at issue in this action. *Id.* ¶3 & Ex. B. Through its website, ICL also allows customers to initiate orders on-line. *Id.* ¶4 & Ex. C.

2

ICL promotes itself as a "global company" with "global reach." *Id.* ¶¶2, 5 & Exs. A & D. Consistent with this, ICL has sales team members dedicated to serving different regions of the world, including Christine Malong, who is listed on ICL's website as the "Business Unit Manager" for the "United States and Europe Networking Division." *Id.* ¶6 & Ex. E. ICL specifically touts its global reach to potential customers: "Having situated operations in major business hubs primary of which [sic], including the UK and the United States, the company operates virtually through all time zones and affords its customers and expansive sourcing reach for their requirements on a worldwide scale." *Id.* ¶7 & Ex. F.

**B.    ICL's Repeated Solicitations Of, And Substantial Sales To, C2C Technology In Massachusetts.**

Defendant C2C Technology ("C2C") is a Massachusetts company with its place of business in Leominster, Massachusetts. Phillips Aff. ¶2. In late 2004, Bryan Phillips, Executive Vice President of C2C, received an email from Christine Malong of ICL soliciting C2C as a potential customer to purchase computer products from ICL. *Id.* ¶3. In a subsequent email in late 2004, Ms. Malong informed Mr. Phillips that Don Mabalot of ICL would serve as ICL's contact person for C2C. *Id.* In December 2004, Mr. Mabalot began a series of email, instant messaging, and telephone communications with Mr. Phillips and Jack Foley, an Account Executive at C2C, in which Mr. Mabalot sought to sell various computer products to C2C. *Id.* ¶4.

From approximately December 2004 to September 2005, Mr. Mabalot communicated with Mr. Phillips and Mr. Foley by telephone, instant messaging or email an average of more than once every business day—hundreds of communications, most of them initiated by Mr. Mabalot—concerning the products ICL was offering for sale to C2C. *Id.* ¶5. In communications that Mr. Phillips received during the December 2004 to September 2005 period, Mr. Mabalot offered for sale to C2C various types of computer products, including several different products purporting to be new, retail, and factory-sealed Hewlett-Packard products. *Id.* ¶6 & Ex. A.

Between December 2004 and July 2005, ICL engaged in eleven separate sales transactions

to C2C, selling over 1,650 units of what Mr. Phillips of C2C believed to be new, retail, original, factory-sealed Hewlett-Packard products, for a total of $295,870 that C2C paid to ICL. *Id.* ¶8-20 & Exs. C-N. All of this merchandise was shipped by ICL in Hong Kong to C2C's offices in Leominster, Massachusetts. *Id.* ¶8.

### C.    ICL's Sales Of Counterfeit Hewlett-Packard Hard Drives To C2C And ICL's Subsequent Efforts To Sell Those Hard Drives To A California Company.

Most recently, in June and July 2005, C2C purchased from ICL a total of 510 hard drives bearing Hewlett-Packard trademarks. Specifically, on June 30, 2005, C2C purchased from ICL a total of 390 hard drive units bearing Hewlett-Packard trademarks (190 units of HP Part No. 286778-B22 and 200 units of HP Part No. 286776-B22) for a total of $92,540 (the "June 30 Hard Drives"). *Id.* ¶17, 20 & Exs. L, N. On July 15, 2005, C2C purchased from ICL an additional 120 hard drive units bearing Hewlett-Packard trademarks (HP Part No. 286778-B22) for a total of $34,200 (the "July 15 Hard Drives"). *Id.* ¶19-20 & Exs. M-N. In July 2005, C2C received from ICL by DHL Express the June 30 and the July 15 Hard Drives. *Id.* ¶21 & Ex. O.

Upon receipt of the Hard Drives, Mr. Phillips of C2C examined some of them and concluded that these hard drives did not conform with Mr. Mabalot's description of them, in that they appeared not to be new, retail, factory-sealed Hewlett-Packard products. *Id.* ¶22. Mr. Phillips spoke with Mr. Mabalot by telephone and informed him that the Hard Drives were defective and that C2C wanted to return the units and receive a full refund of the $126,740 paid to ICL. *Id.* In a subsequent conversation, Mr. Mabalot informed Mr. Phillips that ICL would not refund C2C, but would assist C2C by trying to find another purchaser for these units. *Id.* Mr. Mabalot stated to Mr. Phillips that he planned to assign a Sales Representative to personally sell the Hard Drives. *Id.* Mr. Mabalot also asked Mr. Phillips to keep the Hard Drives at Leominster, Massachusetts, and said that he would sell them from there. *Id.*

ICL thereafter sought to find a buyer for the Hard Drives. On August 11, 2005, Mr. Mabalot sent an unsolicited email with the subject line "Products from ICL Network Solutions (HK) Ltd" to Stuart Jeffries, Vice President of Purchasing and Operations at Arbitech, LLC

4

("Arbitech"). Jeffries Aff. ¶4 & Ex. B. Arbitech is an independent distributor computer products located in Laguna Beach, California that had previously purchased computer products from Integrated Compusystems. *Id.* ¶¶2-3. In the August 11, 2005 email, Mr. Mabalot asked whether Arbitech would be interested in purchasing HP Part No. 286778-B22 at $330/unit and HP Part No. 286776-B22 at $200/unit. *Id.* ¶4 & Ex. B. Mr. Jeffries responded that in light of ICL's "past performance and the proliferation of counterfeit product in the marketplace," he would have to insist that the terms of purchase be "TT upon receipt of product," meaning that Arbitech would wire the payment to ICL only upon receipt and inspection of the product from ICL. *Id.* Mr. Mabalot responded that he would have to discuss Jeffries' request for "TT" upon receipt of the products with the "owner's [sic] of ICLNS." *Id.* In an August 15, 2005 email, Mr. Mabalot informed Mr. Jeffries that although ICL could not agree to his terms of purchase, ICL could send to Arbitech five samples of each of HP Part No. 286778-B22 and HP Part No. 286776-B22, or, Arbitech could inspect the hard drives, as "the products are already in the US." *Id.* By email, Mr. Jeffries asked Mr. Mabalot to ship the samples to Arbitech in Laguna Beach, California. In an August 17, 2005 email, Mr. Mabalot confirmed ICL's shipment of the samples, noting that ICL had "180 units of 286776-b22 and 175 units of 286778-B22 in MA." *Id.*

After initiating contact with Mr. Jeffries of Arbitech, Mr. Mabalot contacted Mr. Phillips of C2C and informed him that ICL had found in Mr. Jeffries a potential buyer of some of the Hard Drives. Phillips Aff. ¶23. Mr. Mabalot requested that Mr. Phillips send five samples of both models of the Hard Drives directly to Mr. Jeffries at Arbitech. *Id.* On August 18, 2005, Mr. Phillips sent to Mr. Jeffries via Federal Express ten units from the Hard Drives (five of each model), noting ICL as the sender since these Hard Drives were being sold by ICL, not C2C. *Id.*

On August 23, 2005, Mr. Mabalot informed Mr. Phillips that Mr. Jeffries was interested in purchasing 180 units of HP Part No. 286778-B22 and 175 units of HP Part No. 286776-B22, but that Mr. Jeffries wanted to inspect the units before purchasing them. Phillips Aff. ¶24. On August 24, 2005, at Mr. Mabalot's request and in anticipation of the inspection by Mr. Jeffries, Mr. Phillips arranged for Worcester County Air Freight, Inc. ("WCAF") to pick up and hold for

inspection 180 units of HP Part No. 286778-B22 and 175 units of HP Part No. 286776-B22 from the Hard Drives that C2C purchased from ICL. *Id.* ¶25 & Ex. Q. Because C2C was not the seller of the Hard Drives, Mr. Phillips did not want them inspected at C2C. *Id.* ¶25.

Based on a tip that counterfeit Hewlett-Packard hard drives were being held at WCAF, on August 30, 2005, a Hewlett-Packard employee traveled to the premises of WCAF, located in Auburn, Massachusetts, to inspect the Hard Drives. Terrell Affidavit ISO Plaintiffs' Opposition to Defendant's Motion to Dismiss ('Terrell Aff. ISO Opp.") ¶3. In the course of this inspection, Ms. Terrell examined 149 36GB hard drives (HP Part No. 286776-B22) bearing Hewlett-Packard trademarks. All of these 149 units were determined to be counterfeit. *Id.*; Affidavit of Margie D. Terrell in Support of Plaintiffs' Application for Temporary Restraining Order and Order to Show Cause ("Terrell Aff. ISO TRO") (filed September 1, 2005) ¶5. Ms. Terrell also examined 56 72GB hard drives (HP Part No. 287778-B22) bearing Hewlett-Packard trademarks (out of the approximately180 drives that were at WCAF). All of these 56 units were determined to be counterfeit. *Id.* ¶¶4 & 6. The serial numbers of the hard drives Mr. Terrell inspected at the WCAF premises correspond to the serial numbers of the June 30 and July 15 Hard Drives that were sold to C2C by ICL. *Compare* Terrell Aff. ISO Opp. Ex. A (spreadsheet containing serial numbers of inspected hard drives), *with* Phillips Aff. Exs. K, M (C2C purchase orders for Hard Drives listing overlapping serial numbers) and N (ICL invoices for the Hard Drives listing overlapping serial numbers).

## ARGUMENT

While "a plaintiff bears the burden of proving the existence of personal jurisdiction," that burden "is not, as a rule, a heavy one." *In re Lupron Mktg. & Sales Practices Litig.*, 245 F. Supp. 2d at 289 (citation omitted); *see Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 975 F. Supp. 30, 37 (D. Mass. 1997). The Court must presume the truth of properly supported facts presented by the plaintiff and view this evidence, along with any uncontested facts put forward by the defendant, in the light most favorable to establishing jurisdiction. *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 108 (D. Mass. 2003); *see Boit v. Gar-Tec*

6

*Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992).

As ICL concedes, the Court may exercise such jurisdiction under either Massachusetts'

long-arm statute, Mass. Gen. L. ch. 223A §3, or under Federal Rule of Civil Procedure 4(k)(2).

Motion at 4.[1]  We address each in turn.

## I.

### THIS COURT HAS PERSONAL JURISDICTION OVER ICL UNDER MASSACHUSETTS' LONG-ARM STATUTE BASED ON ICL'S ACTS CAUSING TORTIOUS INJURY HERE AND ITS TRANSACTION OF BUSINESS IN THE COMMONWEALTH.

Under Federal Rule of Civil Procedure 4(k)(1), the Court may exercise jurisdiction over a

defendant that would be subject to jurisdiction under Massachusetts law.  *In re Lupron Mktg. &*

*Sales Practices Litig.*, 245 F. Supp. 2d at 288.  Massachusetts' long arm statute provides that a

court may exercise personal jurisdiction over a person "arising from the person's"

> (a) transacting any business in this commonwealth;
> . . .
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business . . . or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth. (Mass. Gen.L. ch. 223A §3)

Here, jurisdiction is proper under both of these prongs of the statute.

### A.    ICL Has Transacted Business In This Commonwealth Under Section 3(a).

Hewlett-Packard's claims against ICL arise from ICL's transaction of business in the

Commonwealth.  Mass. Gen. L. ch. 223A §3(a).  "The transacting business test is liberally

construed.  It 'embraces[s] any purposeful acts performed in Massachusetts whether personal,

private, or commercial.'"  *Foster-Miller, Inc.*, 975 F. Supp. at 37 (citations omitted).   In fact, a

defendant need only reach into Massachusetts once or twice by way of telephone, facsimile or

email to transact business in the Commonwealth.  *See Bond Leather Co., Inc. v. Q.T. Shoe Mfg.*

*Co.*, 764 F. 2d 928, 932 (1st Cir. 1985) (four letters and one telephone call into Massachusetts

---

[1]Hewlett-Packard does not contend that ICL is subject to "general jurisdiction" in Massachusetts, but only that the requirements of "specific jurisdiction" under the Massachusetts' long-arm statute, or of Federal Rule of Civil Procedure 4(k)(2), are more than met.

satisfied "transacting any business" requirement of Section 3(a)); *Hahn v. Vermont Law Sch.*, 698 F.2d 48, 51 (1st Cir. 1983) (mailing of application information and acceptance letter to Massachusetts satisfied transacting business requirement); *Workgroup Tech. Corp.*, 246 F. Supp. 2d at 110-11 (four telephone calls, five emails, and three faxes sent to plaintiff over three month period sufficient); *Haddad v. Taylor*, 588 N.E.2d 1375, 1377 (1992) (telephone calls and letters soliciting in-state business sufficient);

Here, ICL did far more than necessary to "transact any business" in Massachusetts. The company solicited business from C2C, a company in Massachusetts; ICL's agent, Mr. Mabalot, initiated and engaged in hundreds of telephone, email, and instant messaging communications with representatives of C2C in Massachusetts in an effort to convince C2C to purchase computer products from ICL; and ICL sold and shipped to C2C in Massachusetts nearing $300,000 worth of such products. *See* Phillips Aff. ¶¶3-21. Moreover, when C2C sought to return the hard drives to ICL, ICL contacted another customer, Arbitech, and sought to sell to Arbitech the units sitting in Massachusetts, even arranging to have sample units shipped from Massachusetts to Arbitech and to have Arbitech come to Massachusetts to inspect the units. *See id.* ¶22-25; Jeffries Aff. ¶4-6.

Nor can there be any reasonable dispute that Hewlett-Packard's claims here "arise from" ICL's transaction of business in Massachusetts. *See Tatro v. Manor Care, Inc.*, 625 N.E. 2d 549, 553 (1994) ("arising from" requirement is fulfilled if plaintiff would not have been injured "but for" defendant's transaction of business in state). As set out above, Hewlett-Packard's claims are based on over two hundred hard drives identified as bearing counterfeit marks, in shipments costing more than $100,000 that were sold by ICL and shipped by it into Massachusetts.

**B.    ICL Has Engaged In Conduct Causing Tortious Injury In This Commonwealth Under Section 3(d).**

Even if the exercise of personal jurisdiction under Section 3(a) were not appropriate—and it is—this Court would have jurisdiction under Section 3(d) because ICL's conduct has caused tortious injury in the Commonwealth and ICL both regularly solicits business in the

Commonwealth and derives substantial revenue from goods sold into Massachusetts. *See* Mass. Gen.L. ch. 223A §3(d).

### a.  ICL's Sale Of Counterfeit Hewlett-Packard Hard Drives Into Massachusetts Caused Tortious Injury In This Commonwealth.

Section 3(d) requires that ICL cause "tortious injury in this commonwealth by an act or omission outside this commonwealth." Mass. Gen.L. ch. 223A §3(d). This requirement is easily satisfied here because a Lanham Act violation—such as that asserted here—constitutes tortious injury in Massachusetts.

In *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215 (1st Cir. 1989), the defendant, a corporation in New York, sent some 6,000 pairs of shoes, worth approximately $15,000, to a customer in Massachusetts. *Id.* at 217. The plaintiff claimed that the shoes infringed on its trademarks, in violation of the Lanham Act. In finding personal jurisdiction, the First Circuit explained that "the 'tort' of infringement is [] the use of a registered mark in connection with the sale of goods, without the consent of the owner, that is likely to cause confusion. . . . The likelihood of confusion creates an injury." *Id.* at 218 (citations omitted). Notably, the First Circuit emphasized that the injury was *both* to the trademark owner (through loss of good will and lost sales) *and* "to the public because of confusion caused by the similar marks." *Id.*

Here, the evidence offered by Hewlett-Packard establishes that ICL shipped hard drive units bearing counterfeit Hewlett-Packard trademarks into Massachusetts, in violation of the Lanham Act. *See* Phillips Aff. ¶¶17, 19-21; Terrell Aff. ISO Opp. ¶¶3-5. ICL further tried to find a substitute buyer for these purportedly Hewlett-Packard units once they were in Massachusetts. *See* Jeffries Aff. ¶¶4-6; Phillips Aff. ¶¶22-24. This conduct by ICL caused economic injury to Hewlett-Packard in the form of lost sales in the forum—which is cognizable as injury under Section 3(d) even if the plaintiff's principal place of business is outside the forum. *Buckeye Assocs., Ltd. v. Fila Sports, Inc.*, 616 F. Supp. 1484, 1493 (D. Mass. 1985); *see Engine Specialties, Inc. v. Bombardier Ltd.*, 454 F.2d 527, 529 (1st Cir. 1972). And, it also caused injury to the public in Massachusetts through potential confusion as to whether the hard

drives shipped into Massachusetts by ICL were or were not genuine Hewlett-Packard products. *Keds Corp.*, 888 F.2d at 218; *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34, 43 (D. Mass. 1997) ("[r]esidents of Massachusetts are also injured because, it is suggested, Clue Computing's domain name may invoke thoughts of the Clue® board and CD ROM games;" finding adequate injury alleged).

>       **b.    ICL Both Regularly Solicits Business in the Commonwealth And Derives Substantial Revenue From Goods Delivered Into Massachusetts.**

In addition to tortious injury, Section 3(d) also requires that the defendant either derives substantial revenue from goods used in Massachusetts or regularly does or solicits business here. *See* Mass. Gen.L. ch. 223A §3(d).  Both these requirements are met here.

>       **(1)    ICL Derives Substantial Revenues From Massachusetts Sales.**

Over a period of less than one year, ICL sold $295,870 worth of computer products to one Massachusetts customer alone (C2C).  *See* Phillips Aff. ¶7.  This certainly meets the "liberal" requirement of "substantial revenue." *Mark v. Obear & Sons, Inc.*, 313 F. Supp. 373, 375-76 (D. Mass. 1970) ($5000 in sales, representing .5 percent of defendant's total annual sales, satisfies statute; *see Keds Corp.*, 888 F.2d at 219 ("sale of 6000 pairs of shoes for $15,000 easily meets this requirement").

>       **(2)    ICL Has Regularly Solicited Business In Massachusetts.**

Even if the "substantial revenue" prong were not met—and it is—the evidence establishes that ICL has engaged in a prolonged and extensive solicitation of business from C2C in Massachusetts, which independently satisfies the requirements of Section 3(d).  ICL originally contacted C2C to sell goods to the Massachusetts company.  Phillips Aff. ¶3.  For some nine months, Mr. Mabalot of ICL engaged in hundreds of telephone, email and instant messaging communications with C2C representatives in Massachusetts, in an extensive effort to sell computer products to C2C.  *See id.* ¶¶4-6.  In addition, ICL maintained a website advertising the products it sold that was accessible to potential customers in Massachusetts and also listed itself as a seller of computer products on www.tradeloop.com, a website both available to

Massachusetts residents and operated by a company based in Massachusetts. *See* Kim Aff. ISO Opp. ¶¶8-10 Exs. G-I. This evidence establishes sufficient solicitation of business in Massachusetts. *See Hasbro*, 994 F. Supp. at 44 (advertising website available to Massachusetts residents and listing Massachusetts company as a client sufficient "solicit[ing of] business").

### C.    Where Title To Goods Sold By ICL May Have Passed Is Irrelevant To The Court's Exercise Of Personal Jurisdiction.

ICL's motion contends that jurisdiction is inappropriate because, under the language of its invoices, title and risk of loss for the goods sold pass to the buyer when ICL receives payment by wire transfer, which is before the goods are shipped from Hong Kong. *See* Motion at 8; Chua Decl. ¶¶14, 15, 17. Hence, according to ICL, it did not itself send any products into Massachusetts and cannot be said to have transacted business in or caused injury in the Commonwealth—even while shipping hundreds of thousands of dollars of computer products into Massachusetts. *See* Phillips Aff. ¶¶17, 19-21 & Exs. N, O.

The First Circuit has rejected this formalistic contention in precisely analogous circumstances. For example, in *Keds*, the defendant New York corporation argued that "because the title of the goods it sells always passes in New York, it only does business in New York." 888 F.2d at 218-19. The First Circuit responded that "it strains credulity to argue soliciting sales, shipping goods, soliciting additional sales and receiving payment from an individual in Massachusetts does not involve interstate commerce." *Id.* at 219 (citation omitted). Similarly, the First Circuit has repeatedly held that an out-of-state defendant who sends goods into the forum state cannot escape personal jurisdiction by relying on the fact that the goods are shipped "free on board" from the shipper's location—meaning the risk of loss shifts to the buyer at that point. *See, e.g., Benitez-Allende v. Alcan Aluminio Do Brasil, S.A.*, 857 F.2d 26, 30 (1st Cir. 1988) (personal jurisdiction in Puerto Rico over Brazilian manufacturers and sellers of defective rice cookers although rice cookers mailed to plaintiffs in Puerto Rico on terms FOB Brazil); *Vencedor Mfg. Co., Inc. v. Gougler Indus., Inc.*, 557 F.2d 886, 890-91 (1st Cir. 1977) (Ohio manufacturer who sent goods to customers in Puerto Rico subject to personal jurisdiction; "it

11

makes no difference that [defendant's] shipments were f.o.b. Ohio"); *see also Buckeye Assocs.*, 616 F. Supp. at 1490 n.7.

**D.    Exercise Of Personal Jurisdiction Over ICL Easily Comports With Due Process Standards.**

ICL contends that even if the requirements of the Massachusetts long-arm statute are met, the exercise of jurisdiction does not comport with due process. *See* Motion at 6-12. Here again, ICL's position ignores the facts concerning its extensive conduct directed at Massachusetts.

Under First Circuit law, due process imposes three requirements that must be met for the Court to exercise personal jurisdiction over a non-resident defendant:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. (*Foster-Miller*, 46 F.3d at 144 (citation omitted))

All three factors are met here.

**1.    Hewlett-Packard's Claims Arise Directly Out Of ICL's Sale of Goods to A Customer Located in Massachusetts.**

Obviously, Hewlett-Packard's claims of trademark infringement clearly arise out of ICL's sale of counterfeit hard drives to C2C, a Massachusetts resident. Hewlett-Packard has been able to determine that over two hundred hard drives that ICL shipped into Massachusetts (and for which ICL was paid tens of thousands of dollars) were counterfeit, giving rise to Hewlett-Packard's claims under the Lanham Act. *See Gary Scott Int'l, Inc. v. Baroudi*, 981 F.Supp. 714 (D. Mass. 1997) (out-of-state defendant subject to personal jurisdiction in trademark action involving its sale of humidors to retailer in Massachusetts).

**2.    ICL's Activities Directed At Massachusetts Constitute Sufficient Purposeful Availment.**

There is no question that ICL has engaged in purposeful availment of the privilege of conducting business in Massachusetts. "The cornerstones of the 'purposeful availment' requirement are voluntariness and foreseeability." *Merced v. JLG Indus., Inc.*, 170 F. Supp. 2d

65, 75 (D. Mass. 2001); *accord Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994). "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995). However, "generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement." *Tatro v. Manor Care, Inc.*, 625 N.E. 2d 549, 51-52 (1994).

Here, ICL's contacts with Massachusetts were not random or fortuitous; they were voluntary, deliberate and extensive. ICL reached out and extensively and successfully solicited a Massachusetts company to purchase computer products generally and the counterfeit hard drives at issue in particular, knowing that C2C intended to resell the products it purchased. *See* Phillips Aff. ¶¶3-21. And when C2C sought to return the Hard Drives to ICL, ICL reached out to another customer, Arbitech, to facilitate Arbitech's inspection and purchase of these hard drives sitting in Massachusetts. *Id.* ¶¶22-25; Jeffries Aff. ¶¶5-6. These commercial activities directed at Massachusetts exceed the threshold for purposeful availment and make it entirely foreseeable that ICL would be subject to jurisdiction here. *See Keds*, 888 F.2d at 219 (purposeful availment where defendant sent one substantial shipment into Massachusetts for resale and shipped samples to distributor in hope of further sales); *Vencedor*, 557 F.2d at 891 (solicitation meets standard of voluntary contact with forum state).

ICL contends that, as in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987), it was mere fortuity that the products ICL sold ended up in the Commonwealth. *See* Motion at 7-8. But given ICL's extensive solicitation of C2C, ICL's written "certification" that it was selling computer products to C2C *in Massachusetts*, and ICL's shipment of the June 30 and July 15 Hard Drives directly to C2C in Leominster via DHL, it was *inevitable* that the counterfeit hard drives would end up in the Commonwealth. *See* Philips Aff. ¶¶7-21 & Exs. A-B, O. ICL cannot credibly claim that it simply placed these hard drives into the stream of commerce and they fortuitously ended up in Massachusetts—*ICL* shipped them there. *See Vencedor*, 557 F.2d at

13

892 (defendant "shipped its products directly to Puerto Rican customers, not to middlemen. The ultimate destination of each [part] was clear").

Nor can ICL contend that it did not engage in purposeful availment because title to the goods it sold to C2C passed in Hong Kong. *See* Motion at 8. The First Circuit has rejected this ploy to defeat minimum contacts. *See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.*, 295 F. 3d 59, 63-64 (1st Cir. 2002) (goods shipped into the forum, "even F.O.B., can satisfy the minimum contacts prong of the due process inquiry"); *Benitez-Allende*, 857 F.2d at 30 ("[t]he fact that title to the [goods] passed in Brazil is beside the point" in minimum contacts analysis).

### 3.    ICL Does Not Compellingly Establish That Exercising Personal Jurisdiction On This Record Would Be Unreasonable.

The final step in the due process analysis asks whether the assertion of jurisdiction is reasonable. *Foster-Miller*, 46 F.3d at 144 (citations omitted). This reasonableness inquiry considers five "gestalt" factors:  (1) the defendant's burden in appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *See United Elec., Radio, & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992). No single factor is dispositive. *See Nowak v. Tak How Invests.*, 94 F.3d 708, 717 (1st Cir. 1996).

A defendant who has purposely directed activities at a forum must present a "compelling case" that exercising personal jurisdiction would somehow be unfair or unreasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77 (1985); *see Cambridge Literary Props.*, 295 F.3d at 66 ("gestalt factors rarely seem to preclude jurisdiction where relevant minimum contacts exist"); *Keds*, 888 F.2d at 220. ICL has not made any such showing.

### a.    The Burden of Appearance

ICL contends that the location of its headquarters in Hong Kong would make litigating this

suit here a burden that weighs heavily against the exercise of jurisdiction. *See* Motion at 10-11. Yet, the mere fact that ICL is located in Hong Kong does not establish an "onerous" burden. *See Ticketmaster*, 26 F.3d at 210; *see also Asahi*, 480 U.S. at 114 ("often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on [an] alien defendant"). Because it is almost always costly and inconvenient to defend a suit in another jurisdiction, the First Circuit recognizes that this factor is "only meaningful where a party can demonstrate some kind of special or unusual burden." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994). Distance alone is not an unusual burden. *See Nowak*, 94 F.3d at 718.

For example, in *Nowak v. Tak How Investments, Ltd.*, a Hong Kong corporation was sued in Massachusetts and claimed burden. The First Circuit rejected this generalized contention because the defendant "alleges nothing special or unusual about its situation beyond the ordinary cost and inconvenience of defending an action so far from its place of business. . . . [T]hat is not enough: it simply cannot be the case that every Hong Kong corporation is immune from suit in Massachusetts." 94 F.3d at 718. *See Pritzker*, 42 F.3d at 64 (onerous burden not found in need to travel from New York to Puerto Rico); *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 987 F.2d 39, 46 (1st Cir. 1993) (onerous burden not found in need to travel between Scotland and Massachusetts).

In fact, there are indications that appearing in Massachusetts would not be an undue burden here. As courts have recognized, "modern technology allows for easier communication." *Hasbro, Inc.*, 994 F. Supp. at 45. ICL cites to its ease in managing dealings between Hong Kong and far-flung locations as a selling point for its customers. *See* Kim Aff. ISO Opp. ¶7 & Ex. F. Numerous ICL employees are fluent in written and spoken English, as evidenced by the numerous emails sent to C2C and other parties, the declaration filed in the present action, and the profiles listed on the ICL's website. *See id.* ¶6 & Ex. E; *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002) (fluency in English mitigated burden). In short, ICL has not alleged—much less substantiated—anything "special or unusual" which would compel the conclusion that jurisdiction would be unreasonable. *Hasbro*, 994 F. Supp. at 45. Given ICL's

knowledge that it was sending substantial shipments of computer products into Massachusetts, the burden here is not unreasonable. *See Gulf Consol. Servs., Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1074-75 (5th Cir. 1990) (unfairness to Greek defendant "relatively insignificant" where defendant knew its goods were being shipped into Texas).

Moreover, the First Circuit has noted that the burden of appearance is useful because it allows a court to guard against harassing litigation. *See Ticketmaster,* 26 F.3d at 211. There is no indication in the present case that Hewlett-Packard chose this forum as a litigation ploy to harass or inconvenience ICL. Rather, it was ICL that chose to solicit Massachusetts customers and sell counterfeit computer products into the forum. "[I]f one does something that could cause a tort in another state, then this inconvenience should be considered by potential foreign defendants before they act." *Digital Equip. Corp. v. AltaVista Tech., Inc.*, 960 F. Supp. 456, 471 (D. Mass. 1997).

**b.    Massachusetts' Interest In This Lawsuit.**

ICL argues that Massachusetts has little interest in adjudicating this lawsuit because it is not the place of Plaintiffs' incorporation or principal place of business. *See* Motion at 11-12. Yet, Massachusetts clearly holds an interest in preventing counterfeit goods from being shipped into the Commonwealth and in preventing confusion among its resident consumers. *See, e.g., Hasbro*, 994 F. Supp. at 45; *see generally Ticketmaster*, 26 F.3d at 211 (a forum state has a significant interest in obtaining jurisdiction over a defendant "who causes tortious injury within its borders"). This factor favors jurisdiction.

**c.    Hewlett-Packard's Interest In Obtaining Convenient and Effective Relief.**

ICL asserts that Plaintiffs "have minimal interest in obtaining relief in this forum." Motion at 12. But the Court must "accord deference to the [plaintiff's] choice of a Massachusetts forum." *Digital Equip. Corp.*, 960 F. Supp. at 471 (citations omitted); *accord, Sawtelle*, 70 F.3d at 1395. Massachusetts is clearly a more convenient forum for Hewlett-Packard than Hong Kong. *See Hasbro*, 994 F. Supp. at 45 (plaintiff "find[s] it [more] convenient to pursue this

action in the state of Massachusetts"). Additionally, key evidence (the counterfeit cartridges) is located in this Commonwealth. This factor also favors jurisdiction.

### d.     The Administration of Justice.

This factor focuses on the judicial system's interest in obtaining the most effective resolution of the controversy and is generally a "wash." *Hasbro* at 45-46; *see Nowak*, 94 F.3d at 718. But as Hewlett-Packard is pursuing claims against two defendants, "resolution of the dispute in a single forum will promote judicial economy." *Merced*, 170 F. Supp. 2d at 76 .

### e.     Substantive Social Policies.

Massachusetts certainly has an interest in protecting its citizens from out-of-state providers of goods and services as well as in preventing confusion among consumers. *See Nowak*, 94 F.3d at 719; *Digital Equip. Corp.*, 960 F. Supp. at 471. ICL offers no substantive social policy interests of Hong Kong that may be compromised by the assertion of personal jurisdiction over ICL under the circumstances of this case. As one court has recognized, "it is also troublesome to allow those who conduct business on the Web to insulate themselves against jurisdiction in every state, except in the state (if any) where they are physically located." *AltaVista*, 960 F. Supp. at 471. ICL targets a worldwide customer base. *See* Kim Aff. ISO Opp. ¶7 & Ex. F. It directly solicited, engaged in communication with, and shipped counterfeit goods to Massachusetts. Allowing ICL to escape being haled into court in Massachusetts based on its physical location when it purposefully sought business in Massachusetts and directly shipped tortious goods to Massachusetts may encourage other foreign corporations to shield themselves from jurisdiction in the Commonwealth in a like manner.

On balance, the "gestalt" factors clearly weigh in favor of finding Massachusetts to be a reasonable forum, and certainly do not establish a "compelling case" of unreasonableness. Given ICL's extensive contacts with Massachusetts and its choice to do business here, "an exercise of personal jurisdiction in this case will do no violence to notions of fair play and substantial justice." *Foster-Miller, Inc.*, 975 F. Supp. at 38.

## II.

### ALTERNATIVELY, THE COURT HAS JURISDICTION OVER ICL UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(K)(2) BASED ON ICL'S CONTACTS WITH THE UNITED STATES AS A WHOLE.

In the event the Court concludes for some reason that ICL is not subject to personal jurisdiction in Massachusetts, the law and the evidence support the exercise of personal jurisdiction over ICL under Federal Rule of Civil Procedure 4(k)(2). This Rule provides that a defendant who is not otherwise subject to general jurisdiction in any state but who has contacts with the nation as whole may be subject to personal jurisdiction. Fed. R. Civ. P. 4(k)(2).

A plaintiff invoking Rule 4(k)(2) need only show "(1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements." *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999). Once the plaintiff makes this prima facie showing, the burden shifts to the defendant to produce evidence that would show either that it is subject to suit in a particular state(s) or that its contacts with the nation are constitutionally insufficient. *Id.*

### A.    Hewlett-Packard Satisfies the Prima Facie Showing Under Rule 4(k)(2).

Hewlett-Packard easily satisfies the three-pronged prima facie showing required under Rule 4(k)(2). *First*, Hewlett-Packard's causes of action for counterfeiting, trademark infringement and false designation of origin all arise under and are expressly predicated on federal law, the Lanham Act. *See* Amended Complaint ¶¶18-31, 32-38, 39-44 (citing 15 U.S.C. §§1116(d)(1)(B)), 1114, 1125). *Second*, there is no specific provision under the Lanham Act that provides for personal jurisdiction over defendants. *Third*, ICL's contacts with the nation are so extensive that the minimum contacts due process analysis is readily met. Specifically,

- ICL hosts a website that advertises and sells its products and that is accessible to any United States resident with an internet connection (Kim Aff. ISO Opp. ¶¶2-4 & Exs. A-C);
- ICL has designated a salesperson to serve as the "Business Unit Manager" for the

18

"United States and Europe Networking Division" (*Id.*);

- ICL sells its products through tradeloop.com, an online forum hosted by a company headquartered in Massachusetts (*Id.* ¶¶8-10 & Exs. G-I);

- ICL and its predecessor sold their merchandise to Arbitech in California, and, in August 2005, ICL reached out to Arbitech in an effort to re-sell the counterfeit Hewlett-Packard drives it originally sold to C2C (Jeffries Aff. ¶¶4-7 & Ex. B; Phillips Aff. ¶¶22-24 & Ex. P); and

- In 2003 and 2004, ICL and its predecessor sold to two different California businesses mini-GBICs that were purportedly Hewlett-Packard products (Kim Aff. ISO Opp. ¶¶11-12 & Ex. J).

In addition, as described above in detail, ICL has had extensive contacts with C2C in Massachusetts.   Under these circumstances—where ICL has purposefully directed it activity to the United States market, specifically targeted United States customers, and did in fact ship its goods into the United States repeatedly—exercise of personal jurisdiction comports with the constitutional due process requirements. *See Graduate Mgmt. Admission Council v. Raju,* 241 F. Supp. 2d 589, 596-98 (E.D. Va. 2003) (Indian citizen's hosting of website accessible to U.S. residents, targeting of U.S. customers, and shipping of goods to U.S. satisfies constitutional requirements for jurisdiction under Rule 4(k)(2)).[2]

### B.     ICL Cannot Rebut Hewlett-Packard's Prima Facie Case for the Application of Rule 4(k)(2).

To rebut the applicability of Rule 4(k)(2), ICL must present evidence that either (1) it is subject to suit in some specific state, or (2) the exercise of jurisdiction offends the Constitution. *Swiss American Bank, Ltd.*, 191 F.3d at 41.   ICL cannot do either.

*First*, any attempt by ICL to show that it is subject to suit in some specific state would directly contradict its assertions in its Motion to Dismiss.   There, ICL specifically disavowed any

---

[2]If the court concludes that ICL's contacts with Massachusetts are not sufficient to exercise jurisdiction, then ICL's contacts with California of which Plaintiffs are currently aware presumably also would not be sufficient to support personal jurisdiction by a court in that state.   Thus far in the litigation, Plaintiffs are unaware of any other states that may exercise jurisdiction over ICL.

meaningful contact with Massachusetts, "or anywhere else in the United States." Motion at 3; *see also id.* at 8 ("ICL . . . has not engaged in any such conduct in the United States, let alone in Massachusetts"). *Second*, Hewlett-Packard has submitted a wealth of evidence that, through its website, its sales force and tradeloop.com, ICL has extensively and repeatedly targeted the United States and has, in fact, delivered into the United States a considerable number of goods. These facts, of which ICL makes no mention in its Motion, render it impossible for ICL to show that the exercise of personal jurisdiction here would violate the constitutional due process requirements. *See Raju,* 241 F. Supp. 2d at 96-98. In sum, if the Court find that there is no personal jurisdiction over ICL under the Massachusetts long-arm statute, personal jurisdiction is proper under Rule 4(k)(2).

## CONCLUSION

For the foregoing reasons, ICL's Motion to Dismiss should be denied.

Dated:  October 11, 2005

Respectfully submitted,

/s/ Simon J. Frankel
SIMON J. FRANKEL

Louis M. Ciavarra  (BBO#546481)
BOWDITCH & DEWEY, LLP
311 Main Street
P.O. Box 15156
Worcester, MA  01615-0156
Telephone:  (508) 926-3408
Facsimile:   (508) 929-3011

HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111
Telephone:  (415) 434-1600
Facsimile:   (415) 217-5910

*Attorneys for Plaintiffs*
*HEWLETT-PACKARD COMPANY, and*
*HEWLETT-PACKARD DEVELOPMENT*
*COMPANY, L.P.*