UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**HEWLETT-PACKARD COMPANY AND**     )
**HEWLETT-PACKARD DEVELOPMENT**     )
**COMPANY, L.P.,**                  )
                                    )   Civil Action No.
      Plaintiffs,   )   05-40153-FDS
                                    )
      v.            )
                                    )
**ICL NETWORK SOLUTIONS (HK), LTD,** )
**AND C2C TECHNOLOGY, INC.,**       )
                                    )
      Defendants.   )
_____)

### MEMORANDUM AND ORDER ON DEFENDANT'S
### MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**SAYLOR, J.**

This dispute involves the alleged sale of counterfeit computer products into Massachusetts by a Hong Kong company. The matter is before the Court on the Hong Kong defendant's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons stated below, the motion will be denied.

**I.    Background**

Plaintiff Hewlett-Packard Company is a Delaware corporation with a principal place of business in Palo Alto, California. Plaintiff Hewlett-Packard Development Company, L.P., is a Texas limited partnership with a principal place of business in Houston, Texas. Plaintiffs will be collectively referred to as "HP," unless otherwise indicated. Defendant ICL Network Solutions (HK), Ltd. ("ICL") is a Hong Kong corporation located in Hong Kong that distributes computer

1

networking and storage products. Defendant C2C Technology, Inc., ("C2C") is a Massachusetts corporation that purchased allegedly counterfeit goods from ICL.

On September 1, 2005, HP filed a complaint against ICL in the District of Massachusetts alleging (1) trademark counterfeiting under 15 U.S.C. § 1116(d)(1)(B); (2) trademark infringement under 15 U.S.C. § 1114; (3) false designation of origin under 15 U.S.C. § 1125; (4) common law unfair competition; and (5) unfair business practices under Mass. Gen. Laws ch. 93A. The complaint, as amended on September 22, alleges that ICL sold to C2C 510 computer hard drives, at least some of which bore allegedly counterfeit HP trademarks.[1] Specifically, C2C purchased 390 hard drives for $92,540 on June 30, 2005, and an additional 120 hard drives for $34,200 on July 15, 2005. HP contends that it inspected 205 of the hard drives from these orders, and none of the inspected units were genuine HP products.

Along with the original complaint, HP applied for a temporary restraining order against ICL. On September 2, Judge Lindsay of this Court granted the TRO and issued an order to show cause. ICL filed the present motion on September 22. Following a hearing on September 23, this Court entered preliminary injunction that, *inter alia*, restrained ICL from using certain counterfeit reproductions of HP trademarks and from trafficking in counterfeit HP goods.

## II. Personal Jurisdiction

### A. Standard of Proof

The plaintiff bears the burden of showing that the court has personal jurisdiction over ICL. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st

---

[1] The complaint also alleges that C2C purchased some 750 "mini-GBIC" devices, at least some of which were counterfeit. HP does not discuss the circumstances of the sale of these devices in its memorandum opposing ICL's motion.

Cir. 2002). A district court faced with a motion to dismiss under Rule 12(b)(2) may choose among several methods for determining whether the plaintiff has met its burden: the "prima facie" standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard. *Id.* at 50-51 & n.5. The "most conventional" and "most commonly used" of these methods is the "prima facie" standard. *Id.* at 51; *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995); *Boit v. Gar-Tec Prods., Inc.* 967 F.2d 671, 675 (1st Cir. 1992).

Under the prima facie standard, the Court is permitted to "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit*, 967 F.2d at 675. The court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Foster-Miller*, 46 F.3d at 145. The Court may then consider the "facts put forward by the defendants, to the extent that they are uncontradicted." *Massachusetts School of Law at Andover v. American Bar Association,* 142 F.3d 26, 34 (1st Cir. 1998). The Court will apply this method.[2]

As alleged by HP, ICL's contacts with Massachusetts are as follows: ICL (1) directly solicited business from C2C, a Massachusetts company; (2) communicated extensively over several months with C2C executives via e-mail, telephone, and instant messaging; (3) entered into eleven separate sales transactions with C2C, for a total of 1,661 units[3] of computer hardware

---

[2] When litigating in a particular forum may pose a significant burden on the defendant, or when important jurisdictional facts are contested, the Court may adopt one of the more scrutinizing standards. *See Boit*, 967 F.2d at 676; *Foster-MIller*, 46 F.3d at146-148. In the present case, however, ICL declined the Court's express invitation to file a reply to HP's opposition to the motion to dismiss, and few facts are directly disputed.

[3] Apparently, one unit remains on backorder. (Phillips Aff. ¶ 18.)

components at a total price of $295,870; (4) solicited business in the United States, including Massachusetts, on its (now defunct) web site, www.iclns.com; and (5) solicited business in the United States, including Massachusetts, by listing itself on the web site www.tradeloop.com, an online trading network for computer dealers hosted by a Massachusetts company.[4] As these allegations are properly supported in the record by the affidavits of C2C's Executive Vice President Bryan Phillips and attorney Jin H. Kim and their accompanying exhibits, the Court accepts these facts as true in determining whether HP has made a prima facie showing of personal jurisdiction.

Based on those facts, HP contends ICL is subject to specific personal jurisdiction. *See United Electrical Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088-89 (1st Cir. 1992) (distinguishing general versus specific jurisdiction). This Court has no inherent authority to assert jurisdiction over a foreign defendant. *See In re Lupron Marketing and Sales Practices Litigation*, 245 F. Supp 2d 280, 288 (D. Mass. 2003). As a result, "[i]t must look to a federal statute for the grant of such authority, or it must 'borrow' the long-arm statute of the state in which it sits." *Id.*; *see also* Fed. R. Civ. P. 4(k)(1). Because the federal statutes upon which HP's claims are based do not grant such authority, jurisdiction must comport with both the Massachusetts long-arm statute and "'the strictures of the Constitution.'" *Foster-Miller*, 46 F.3d at 144 (quoting *Pritzker v. Yari,* 42 F.3d 53, 60 (1st Cir.1994)).

---

[4] HP also contends that after C2C expressed dissatisfaction with the hard drives in dispute, ICL attempted to sell the hard drives, which were stored in Massachusetts, to a California company. ICL asserts that it was merely attempting to secure a purchaser as a convenience to C2C, who owned the goods. The Court will not rely on this alleged contact in its analysis.

4

### B. Personal Jurisdiction under the Massachusetts Long-Arm Statute

The Massachusetts long-arm statute provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). Therefore, in order for jurisdiction to exist pursuant to § 3(a), (1) the defendant must have transacted business in Massachusetts, and (2) the plaintiff's claim must have arisen from the defendant's transaction of such business. *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 767 (1994). However, a federal court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis . . . because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" *Daynard*, 290 F.3d at 52 (quoting *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441 (1972)); *see also Sawtelle v. Farrell,* 70 F.3d 1381, 1388 (1st Cir. 1995) ("[W]hen a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the . . . constitutional standards."). The Court therefore will analyze the issue under the constitutional requirements.

### C. Personal Jurisdiction under the Due Process Clause

#### 1. Standard

For a court to assert personal jurisdiction, the Due Process Clause of the Fourteenth Amendment requires that the defendant have certain minimum contacts with the forum such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This constitutional

inquiry involves an examination of three factors: relatedness, purposeful availment (or "minimum contacts"), and reasonableness. *Foster-Miller*, 46 F.3d at 144.

First, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *Id.* Second, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Id.* Finally, the exercise of jurisdiction must be reasonable. *Id.* The Supreme Court has identified five criteria relevant to assessing reasonableness:

> (1) [T]he defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*163 Pleasant Street*, 960 F.2d at 1088 (citing *Rudzewicz*, 471 U.S. at 477). The First Circuit has labeled these criteria the "gestalt factors." *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990); *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994).

### 2. **Analysis**

#### a. **Relatedness**

The first factor requires that the claim underlying the litigation arise out of, or relate to, the defendant's forum-state activities. The First Circuit generally requires that the defendant's actions not only constitute the "but for" cause of the injury, but the proximate cause as well. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 715-16 (1st Cir. 1996) (adopting a "loose" proximate cause standard for the relatedness inquiry). Here, all plaintiffs' claims relate directly

to the sale in Massachusetts of the purportedly counterfeit goods. It is precisely ICL's alleged forum-state activities that give rise to the cause of action. *See, e.g., Gary Scott Int'l, Inc. v. Baroudi*, 981 F. Supp. 714 (D. Mass. 1997) (Massachusetts plaintiff's claim under Lanham Act arose directly out of California defendant's sale of allegedly infringing items in Massachusetts). Thus, ICL's contacts clearly satisfy the first prong of the due process inquiry.

### b. Purposeful Availment

The second factor—purposeful availment—is intended to "assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." *Sawtelle*, 70 F.3d at 1391 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)). There are two "cornerstones" of purposeful availment: voluntariness and foreseeability. *Ticketmaster-N.Y.*, 26 F.3d at 207.

First, "[t]he defendant's contacts with the forum state must be voluntary—that is, not based on the unilateral actions of another party or a third person." *Nowak*, 94 F.3d at 716. Second, "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

In the present case, ICL directly solicited C2C as a potential customer via e-mail in late 2004. (Phillips Aff. ¶ 3.) Shortly thereafter, ICL designated Don Mabalot, its Chief Financial Officer and Operations Head, as the company's contact for C2C. (Id.) Mabalot and Bryan Phillips, C2C's Executive Vice President, soon began discussing ICL's product offerings. (Id. ¶¶ 4-5.) Those discussions took place over the telephone as well as by e-mail and instant messages. (Id. ¶ 5.) According to Phillips, in the ten-month period between December 2004 and September

2005, the two had approximately 150 separate communications regarding products ICL was selling. (Id.)[5]

On December 17, 2004, C2C placed the first of eleven orders with ICL for various computer components such as hard drives and RAM modules. (Phillips Aff. Ex. C.) In all, C2C paid a total of $295,870 for 1,661 units of computer hardware. (Phillips Aff. ¶¶ 8-19 & Exs. C - N.)

Although ICL has no property, employees, or agents in Massachusetts, a defendant need not have a physical presence—temporary or permanent—in the state to satisfy the requirements of the Due Process Clause. *See Rudzewicz,* 471 U.S. at 476 (Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction," as "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines"). Moreover, even a single business transaction by a defendant, if it creates a "substantial connection" with the forum, can give rise to personal jurisdiction. *See id.* at 476 n.18.

Both the volume and the nature of ICL's direct communications with C2C indicate both that it was aware that C2C was a Massachusetts company and that it decided voluntarily to conduct business with C2C in this forum. For example, one e-mail from ICL carried the subject heading "HP/COMPAQ UPDATED PRICES EXCLUSIVELY FOR C2C" and included a list of products "with reduced prices all landed to you in MA." (Phillips Aff. Ex. A.) ICL also provided a letter, at C2C's request, that stated in relevant part: "This is to certify that ICL

---

[5] According to Phillips, C2C Account Executive Jack Foley had a similar number of communications with Mabalot. (Phillips Aff. ¶ 5.) Foley did not, however, submit an affidavit.

Network Solutions (HK) Ltd. . . . is supplying high-end computer products and peripherals to C2C Technology, a company based in Leominster, Massa[c]husetts, USA." (Phillips Aff. Ex. B.) The record also includes shipping invoices that list ICL as the shipper and include C2C's delivery address in Leominster, Massachusetts. Although not all these potential "contacts" relate specifically to the hard drives in dispute, a court may consider "'prior negotiations and contemplated future consequences, along with . . . the parties' actual course of dealing'" to determine "whether specific jurisdiction exists." *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996); *see also A-Connoisseur Transp. Corp. v. Celebrity Coach, Inc.*, 742 F. Supp. 39, 43 (D. Mass. 1990) (in due process inquiry, court is "to look at all of the communications and transactions between the parties, before, during and after the consummation of the contract"). The prior dealings cited are part of the foundation upon which the sales of the allegedly counterfeit hard drives were built.

ICL contends that, despite its substantial history of communications and transactions with C2C, it did not "transact business" in Massachusetts because title to all goods was transferred in Hong Kong, and therefore it could not have expected to be haled into a Massachusetts court in a dispute arising from the sale of those goods. In light of the extensive contacts between ICL and this forum, however, the mere fact that title passed abroad is not dispositive. *Benitez-Allende v. Alcan Alumino Do Brasil*, S.A., 857 F.2d 26, 30 (1st Cir. 1988) (applying the principle that "a truly interstate business may not shield itself from suit by careful but formalistic structuring of its business dealings" to a Brazilian company's transactions with purchasers in Puerto Rico); *see also Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.*, 295 F.3d 59, 64 (1st Cir. 2002) ("The shipment of large quantities of goods into a state, even F.O.B.,

9

can satisfy the minimum contacts prong of the due process inquiry."); *cf. Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 219 (1st Cir. 1989) (although New York defendant "feebly" argued that jurisdiction in Massachusetts was improper because title to the goods passed in New York, "it strains credulity to argue that soliciting sales, shipping goods, soliciting additional sales and receiving payment from an individual in Massachusetts does not involve interstate commerce.").

ICL's suggestion that it merely placed the computer parts into the stream of commerce is equally unavailing. Although "placement of a product into the stream of commerce, without more, is not an act . . . purposefully directed toward the forum State," *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 85 (1st Cir. 1997) (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 112 (1987)), ICL in fact did much more: it sold and shipped the products directly to a Massachusetts company. Unlike the typical "stream of commerce case," ICL did not sell to a middleman who, unbeknown to ICL, then shipped the goods into Massachusetts. *See Turpin v. Mori Seiki Co.*, Ltd. 56 F. Supp. 2d 121, 126 (D. Mass. 1999) ("[I]f intermediaries act unilaterally to introduce a manufacturer's products into the forum state, the manufacturer cannot be said to have purposefully engaged in forum activities, even if it knew of the unilateral action.").

In short, based on the volume and nature of ICL's direct communications with C2C, and nearly $300,000 in sales to C2C, the Court finds that ICL's contacts with Massachusetts were both voluntary and sufficient to make it reasonably foreseeable that ICL would be haled into court here regarding those business transactions. Accordingly, ICL has purposefully availed itself of the privilege of conducting business in the Commonwealth.

### c. Reasonableness

As noted, the so-called "gestalt factors" used to determine reasonableness include (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *163 Pleasant Street*, 960 F.2d at 1088. "The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close. In such cases, the gestalt factors may tip the constitutional balance." *Nowak*, 94 F.3d at 717. Weighing these factors, the Court finds that it would be reasonable to exercise personal jurisdiction over ICL.

### (1) The Burden of Appearing in Massachusetts

ICL argues that litigating in Massachusetts would impose a heavy burden on the company because of the geographic distance and the twelve-hour time difference that separate Hong Kong and Massachusetts. While the Court acknowledges that it will be burdensome for ICL to appear in Massachusetts, "it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction." *Nowak*, 94 F.3d at 718. Thus, for this factor to have any significance, "the defendant must demonstrate that the 'exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.'" *Id.* (quoting *Pritzker*, 42 F.3d at 64). Here, as in *Nowak*, the defendant "alleges nothing special or unusual about its situation beyond the ordinary cost and inconvenience of defending an action so far from its place of business." *Id.* at 718. As the First Circuit noted, "it simply cannot be the case that every

11

Hong Kong corporation is immune from suit in Massachusetts." *Id.*[6]

### (2) Interest of the Forum

The purpose of this inquiry is not to compare the forum state's interests to the interests of other jurisdictions; rather, it is "to determine whether the forum state *has* an interest." *Nowak*, 94 F.3d at 718. A forum state "has a demonstrable interest in exercising jurisdiction over one who cases tortious injury within its borders." *Ticketmaster-N.Y.*, 26 F.3d at 211. The First Circuit has noted that "[t]he injury in an infringement case is two-fold: to the trademark owner through loss of good will and presumably profits and to the public because of confusion caused by the similar marks." *Keds Corp.*, 888 F.2d at 218. Thus, Massachusetts has an interest in this matter, at a minimum, because of the potential injury to its residents caused by the allegedly counterfeit goods sold by ICL. *See also Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp 34, 43 (D. Mass. 1997) (in trademark infringement dispute, Massachusetts residents injured "because, it is suggested, Clue Computing's domain name may invoke thoughts of the Clue® board and CD ROM games").

### (3) Plaintiff's Convenience

There appear to be four forums in which the case could be litigated: California, Texas, Hong Kong, or Massachusetts. Plaintiffs have chosen Massachusetts, however, and the Court should give deference to that choice. *Foster-Miller*, 46 F.3d at 151; *Nowak*, 94 F.3d at 718. In the present case, it is obvious that Massachusetts is a more convenient forum for HP than ICL's

---

[6] The First Circuit has also "noted that the burden of appearance is an important gestalt factor primarily because it allows a court to guard against harassing litigation." *Nowak*, 94 F.3d at 718. There is no evidence here that the plaintiff brought the present suit in order to harass ICL. *Compare Ticketmaster-N.Y.,* 26 F.3d at 210-211 (relying in part on fact that the "circumstances surrounding this case suggest that the inconvenience to the defendant may not be coincidental" to find exercise of jurisdiction unreasonable).

ostensible alternative, Hong Kong. Aside from distance (Massachusetts is approximately 2,700 air miles from San Francisco and approximately 1,600 air miles from Houston; Hong Kong is approximately 6,900 air miles from San Francisco and 8,300 air miles from Houston), Massachusetts is also the location of key evidence—the hard drives. Without any indication of indication of harassment or other improper motive on HP's part, this factor militates in favor of the Court's exercise of jurisdiction.

### (4) **Administration of Justice**

This factor examines the "judicial system's interest in obtaining the most efficacious resolution of the controversy [and] counsels against furcation of the dispute among several different jurisdictions." *Pritzker*, 42 F.3d at 64. Plaintiff concedes this factor is essentially neutral, and defendant does not argue to the contrary; the Court agrees.

### (5) **Public Policy**

This factor "addresses the interests of the affected governments in substantive social policies." *Nowak*, 94 F.3d at 719. Massachusetts has a clear interest in protecting its citizens from the introduction of purportedly counterfeit goods, and likewise in protecting companies that do legitimate business in the state. Although ICL does not address this issue, the Court recognizes that Hong Kong also has a basic interest in protecting its businesses and providing them with a convenient forum to resolve disputes. This factor is essentially neutral under the circumstances of this case.

To summarize, of the five "gestalt" factors, three favor a Massachusetts forum and two are neutral. On balance, this is not sufficient to deny HP the opportunity to litigate in Massachusetts, particularly given the strength of HP's evidence on the first two prongs of the

13

due-process inquiry—relatedness and purposeful availment.  *See Ticketmaster-N.Y.*, 26 F. 3d at 210 (applying a "sliding scale" in which a plaintiff's strong showing of relatedness and purposeful availment will compensate for a weaker showing of reasonableness).

In summary, plaintiff has provided sufficient evidence to satisfy all three prongs of the due process inquiry, demonstrating that jurisdiction here comports with traditional notions of fair play and substantial justice.  Accordingly, this Court concludes that the exercise of personal jurisdiction over ICL in Massachusetts is proper.

### III.     Conclusion

For the reasons state above, the Motion of Defendant ICL Network Solutions (HK), Ltd.,  to Dismiss for Lack of Personal Jurisdiction is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: November 29, 2005