

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

*A Professional Corporation*

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.217.5910
www.howardrice.com

Writer's Information:

Jin H. Kim
jkim@howardrice.com

April 27, 2005

Honorable F. Dennis Saylor
United States District Court
 For the District of Massachusetts
595 Main Street
Worcester, MA 01608

    Re:   Hewlett-Packard Company and Hewlett-Packard Development Company, L.P. v. ICL Network Solutions (HK), Ltd. and C2C Technology, Inc.
           Civil Action No. 05-40153 (FDS)

Dear Judge Saylor:

      On behalf of Plaintiffs, I am writing to follow up on the April 14, 2005 scheduling hearing before your Honor. At that hearing, you requested us to provide authority for the proposition that a corporate entity may not appear pro se in federal court. In *Rowland v. California Men's Colony*, 506 U.S. 194, (1993), the Supreme Court considered the related question of whether corporate entities may proceed in forma pauperis. In holding that only natural persons may proceed in forma pauperis, the Court observed the following:

> It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel. *Osborn v. President of Bank of United States,* 9 Wheat. 738, 829, 6 L.Ed. 204 (1824); see *Turner v. American Bar Assn.,* 407 F.Supp. 451, 476 (ND Tex. 1975) (citing the "long line of cases" from 1824 to the present holding that a corporation may only be represented by licensed counsel), affirmance order *sub nom. Taylor v. Montgomery,* 539 F.2d 715 (Table) (CA7 1976), and aff'd *sub nom. Pilla v. American Bar Assn.,* 542 F.2d 56 (CA8 1976). As the courts have recognized, the rationale for that rule applies equally to all artificial entities. Thus, save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654, providing that "parties may plead and conduct their own cases personally or by counsel," does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney. See, *e.g., Eagle Associates v. Bank of Montreal,* 926 F.2d 1305 (CA2 1991) (partnership); *Taylor v. Knapp,* 871 F.2d 803, 806 (CA9) (nonprofit corporation formed by prison inmates), cert. denied, 493 U.S. 868, 110 S.Ct. 192, 107 L.Ed.2d 146 (1989); *Jones v. Niagara Frontier Transportation Authority,* 722 F.2d 20, 22 (CA2 1983) (corporation); *Richdel, Inc. v. Sunspool Corp.,* 699 F.2d 1366 (CA Fed.1983) *(per curiam)* (corporation); *Southwest Express Co. v. ICC,* 670

F.2d 53, 55 CA5 1982) *(per curiam)* (corporation); *In re Victor Publishers, Inc.,* 545 F.2d 285, 286 (CA1 1976) *(per curiam)* (corporation); *Strong Delivery Ministry Assn. v. Board of Appeals of Cook County,* 543 F.2d 32, 34 (CA7 1976) *(per curiam)* (corporation); *United States v. 9.19 Acres of Land,* 416 F.2d 1244, 1245 (CA6 1969) *(per curiam)* (corporation); *Simbraw, Inc. v. United States,* 367 F.2d 373, 374 (CA3 1966) *(per curiam)* (corporation).

*Id.* at 201-03. For the Court's convenience, we are enclosing a copy of the *Rowland* opinion.

Very truly yours,

Jin H. Kim

JHK/jc
cc: Louis Ciavarra (via electronic mail)
    Ann Lamport Hammitte (via electronic mail)
    Armee Filamor of ICL Network Solutions (HK), Ltd (via electronic mail)



113 S.Ct. 716                                                                                                                                  Page 1
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
**(Cite as: 506 U.S. 194, 113 S.Ct. 716)**

Briefs and Other Related Documents

Supreme Court of the United States
James ROWLAND, Former Director, California
Department of Corrections, et al., Petitioners,
v.
CALIFORNIA MEN'S COLONY, UNIT II MEN'S
ADVISORY COUNCIL.
No. 91-1188.

Argued Oct. 6, 1992.
Decided Jan. 12, 1993.

Inmate association brought civil rights action under § 1983 against prison officials and moved to proceed in forma pauperis. The United States District Court for the Central District of California, Manuel L. Real, Chief Judge, adopted Magistrate's recommendation and denied motion on ground that association had made inadequate showing of indigency. Association appealed. The Court of Appeals for the Ninth Circuit, 939 F.2d 854, reversed and remanded. Certiorari was granted. The United States Supreme Court, Justice Souter, held that only natural persons could proceed in forma pauperis.

Court of Appeals decision reversed; case remanded.

Justice Kennedy filed dissenting opinion.

Justice Thomas filed dissenting opinion, in which Justices Blackmun, Stevens, and Kennedy joined.

West Headnotes

**[1] Statutes 361 ⇐208**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k204 Statute as a Whole, and Intrinsic Aids to Construction
                361k208 k. Context and Related Clauses. Most Cited Cases
Term "context" as used in Dictionary Act definition of "person" to include specifically designated entities unless "context" indicates otherwise, means text of the Act of Congress surrounding word at issue, or texts of other related congressional Acts. 1 U.S.C.A. § 1.

**[2] Statutes 361 ⇐199**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k187 Meaning of Language
                361k199 k. Particular Words and Phrases. Most Cited Cases
Word "indicates," appearing in Dictionary Act definition of word "person" to include specifically designated entities unless context "indicates" otherwise, has broad meaning bespeaking something more than an express contrary definition in statute in question. 1 U.S.C.A. § 1.

**[3] Federal Civil Procedure 170A ⇐2734**

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2732 Deposit or Security
            170Ak2734 k. Forma Pauperis Proceedings. Most Cited Cases
Word "person" as used in statute authorizing civil litigant to proceed in forma pauperis, refers only to natural person, even though word is defined in Dictionary Act to include artificial entities other than natural persons; in forma pauperis statute provision that counsel may be appointed to represent person indicated that persons could represent themselves, a possibility only for natural persons, statute's reference to poverty was to a human condition, entities could not take oath required under statute and consequently could not make necessary affidavits, statute gave no indication of how inability to pay standard contained therein would be applied to artificial entities, and no purpose of statute would be frustrated by restriction of "person" to cover only natural persons. 1 U.S.C.A. § 1; 28 U.S.C.A. § 1915(a, d).

**[4] Associations 41 ⇐1**

41 Associations
    41k1 k. Nature and Status in General. Most Cited Cases

**Constitutional Law 92 ⇐91**

92 Constitutional Law
    92V Personal, Civil and Political Rights
        92k91 k. Right of Assembly and Petition. Most

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

113 S.Ct. 716                                                Page 2
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
(Cite as: 506 U.S. 194, 113 S.Ct. 716)

Cited Cases

**Federal Civil Procedure 170A** ⟶2734

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2732 Deposit or Security
            170Ak2734 k. Forma Pauperis Proceedings. Most Cited Cases
Restriction on definition of term "person" as used in in forma pauperis statute, preventing an association of prisoners bringing civil rights suit against prison authorities from proceeding in forma pauperis, did not constitute unconstitutional burden on prisoners' First Amendment rights to associate; individual asset information would be required from prisoners regardless of whether they were suing individually or through association. U.S.C.A. Const.Amend. 1; 28 U.S.C.A. § 1915; 42 U.S.C.A. § 1983.

**717 *Syllabus*

> FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See _United States v. Detroit Lumber Co._, 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499.

In a suit filed in the District Court against petitioner state correctional officers, respondent, a representative association of inmates in a California prison, sought leave to proceed _in forma pauperis_ under 28 U.S.C. § 1915(a), which permits litigation without prepayment of fees, costs, or security "by a person who makes affidavit that he is unable to pay." The court denied the motion for an inadequate showing of indigency. In reversing that decision, the Court of Appeals noted that a "person" who may be authorized to proceed _in forma pauperis_ under § 1915(a) may be an "association" under the Dictionary Act, 1 U.S.C. § 1, which in relevant part provides that "in determining the meaning of any Act of Congress, unless the context indicates otherwise" " 'person' " includes "associations" and other artificial entities such as corporations and societies.

_Held:_ Only a natural person may qualify for treatment _in forma pauperis_ under § 1915. Pp. 720-726.

(a) "Context," as used in 1 U.S.C. § 1, means the text of the Act of Congress surrounding the word at issue or the texts of other related congressional Acts, and this is simply an instance of the word's ordinary meaning. Had Congress intended to point to a broader definition that would include things such as legislative history, it would have been natural to use a more spacious phrase. In contrast to the narrow meaning of "context," "indication" bespeaks something more than an express contrary definition, addressing the situation where Congress provides no particular definition, but the definition in § 1 seems not to fit. P. 720.

(b) Four contextual features indicate that "person" in 28 U.S.C. § 1915(a) refers only to individuals. First, the permissive language used in § 1915(d)-that a "court *may* request an attorney to represent any such person unable to employ counsel" (emphasis added)-suggests that Congress assumed that courts would sometimes leave the "person" to conduct litigation on his own behalf, and, thus, also assumed that the "person" has the legal capacity to petition the court for appointment of *195 counsel while unrepresented and the capacity to litigate _pro se_ should the petition be denied. These assumptions suggest in turn that Congress was thinking in terms of natural persons, because the law permits corporations, see, _e.g., Osborn v. President of Bank of United States,_ 9 Wheat. 738, 829, 6 L.Ed. 204, and other artificial entities, see, _e.g., Eagle Associates v. Bank of Montreal,_ 926 F.2d 1305 (CA2 1991), to appear in federal courts only through licensed counsel. Second, § 1915(d) describes the affidavit required by § 1915(a) as an allegation of "poverty," which is a human condition that does not apply to an artificial entity. Third, because artificial entities cannot take oaths, they cannot make the affidavits required in § 1915(a). It would be difficult to accept an affidavit on the entity's behalf from an officer or agent in this statutory context, since it would be hard to determine an affiant's authorization to act on behalf of an amorphous legal creature such as respondent; since the term "he" used in § 1915(a)'s requirement that the affidavit must state the "affiant's belief that _he_ is entitled to redress" (emphasis added) naturally refers to the "affiant" as the person seeking _in forma pauperis_ status; and since the affidavit cannot serve its deterrent function fully when applied to artificial entities, which may not be imprisoned for perjurious statements. Fourth, § 1915 gives no hint of how to resolve the issues raised by applying an "inability to pay" standard to artificial entities. Although the "necessities of life" criterion cannot apply, no alternative criterion can be discerned in § 1915's language and there is no obvious analogy, including insolvency, to that criterion in the organizational **718 context. Nor does § 1915 guide courts in determining when to "pierce the veil" of the entity, which would be necessary to avoid

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

abuse. Respondent's argument that there is no need to formulate comprehensive rules in the instant case because it would be eligible under any set of rules is rejected, since recognizing the possibility of organizational eligibility would force this Court to delve into difficult policy and administration issues without any guidance from § 1915. Pp. 720-724.

(c) Section 1915 manifests no single purpose that would be substantially frustrated by limiting the statutory reach to natural persons. _Wilson v. Omaha Tribe,_ 442 U.S. 653, 666, 99 S.Ct. 2529, 2537, 61 L.Ed.2d 153; _United States v. A & P Trucking Co.,_ 358 U.S. 121, 79 S.Ct. 203, 3 L.Ed.2d 165, distinguished. In addition, denying respondent _in forma pauperis_ status would not place an unconstitutional burden on its members' First Amendment rights to associate by requiring them to demonstrate their indigency status, since a court could hardly ignore the assets of an association's members in making an indigency determination for the organization. Pp. 725-726.

939 F.2d 854 (CA9 1991), reversed and remanded.

*196 SOUTER, J., delivered the opinion of the Court, in which REHNQUIST, C.J., and WHITE, O'CONNOR, and SCALIA, JJ., joined. KENNEDY, J., filed a dissenting opinion, _post,_ p. 726. THOMAS, J., filed a dissenting opinion, in which BLACKMUN, STEVENS, and KENNEDY, JJ., joined, _post,_ p. 726.

James Ching, Sacramento, Cal., argued for petitioners.
Charles D. Weisselberg, Los Angeles, Cal., argued for respondent.
Justice SOUTER delivered the opinion of the Court.
Title 28 U.S.C. § 1915, providing for appearances _in forma pauperis,_ authorizes federal courts to favor any "person" meeting its criteria with a series of benefits including dispensation from the obligation to prepay fees, costs, or security for bringing, defending, or appealing a lawsuit. Here, we are asked to decide whether the term "person" as so used applies to the artificial entities listed in the definition of that term contained in 1 U.S.C. § 1. We hold that it does not, so that only a natural person may qualify for treatment _in forma pauperis_ under § 1915.

I

Respondent California Men's Colony, Unit II Men's Advisory Council (Council), is a representative association of prison inmates organized at the behest of one of the petitioners, the Warden of the Colony, to advise him of complaints and recommendations from the inmates, and to communicate his administrative decisions back to them. The general prison population elects the Council's members.

In a complaint filed in the District Court in 1989, the Council charged the petitioners, state correctional officers, with *197 violations of the Eighth and Fourteenth Amendments in discontinuing their practice of providing free tobacco to indigent inmates. The Council sought leave to proceed _in forma pauperis_ under 28 U.S.C. § 1915(a), claiming by affidavit of the Council's chairman that the warden forbade the Council to hold funds of its own. The District Court denied the motion for an inadequate showing of indigency, though it responded to the Council's motion for reconsideration with a suggestion of willingness to consider an amended application containing "details of each individual's indigency."

On appeal, the Council was allowed to proceed _in forma pauperis_ to enable the court to reach the very question "whether an organization, such as [the Council], may proceed _in forma pauperis_ pursuant to 28 U.S.C. § 1915(a)." No. 90-55600 (CA9, July 20, 1990). The court requested that a lawyer **719 represent the Council pursuant to 28 U.S.C. § 1915(d).

FN1. For a description of § 1915(d) and its relationship to § 1915(a), see _infra,_ at 719, 722.

The Court of Appeals reversed, 939 F.2d 854 (CA9 1991), noting that a "person" who may be authorized by a federal court to proceed _in forma pauperis_ under § 1915(a) may be an "association" under a definition provided in 1 U.S.C. § 1. The Council being an "association," it was a "person" within the meaning of § 1915(a), and could proceed _in forma pauperis_ upon the requisite proof of its indigency. The court found it adequate proof that prison regulations prohibited the Council from maintaining a bank account, and, apparently, from owning any other asset.

We granted certiorari, 503 U.S. 905, 112 S.Ct. 1261, 117 L.Ed.2d 490 (1992), to resolve a conflict between that decision and the holding in _FDM Manufacturing Co. v. Scottsdale Ins. Co.,_ 855 F.2d

113 S.Ct. 716
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
**(Cite as: 506 U.S. 194, 113 S.Ct. 716)**

Page 4

213 (CA5 1988) *(per curiam)* ("person," within the meaning of § 1915(a), includes only natural persons). We reverse.

### *198 II

#### A

Both § 1915(a), which the Council invoked in seeking to be excused from prepaying filing fees, and § 1915(d) employ the word "person" in controlling access to four benefits provided by § 1915 and a related statute. First, a qualifying person may "commenc[e], prosecut[e] or defen[d] ... any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor." 28 U.S.C. § 1915(a). Second, a court may in certain cases direct the United States to pay the person's expenses in printing the record on appeal and preparing a transcript of proceedings before a United States magistrate. § 1915(b). Third, if the person is unable to employ counsel, "[t]he court may request an attorney to represent [him]." § 1915(d). And, fourth, in an appeal, the United States will pay for a transcript of proceedings below "if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)." 28 U.S.C. § 753(f); see *ibid.* (detailing slightly different criteria for habeas proceedings).

"Persons" were not always so entitled, for the benefits of § 1915 were once available only to "citizens," a term held, in the only two cases on the issue, to exclude corporations. See *Atlantic S.S. Corp. v. Kelley,* 79 F.2d 339, 340 (CA5 1935) (construing the predecessor to § 1915); *Quittner v. Motion Picture Producers & Distributors of America, Inc.,* 70 F.2d 331, 332 (CA2 1934) (same). In 1959, however, Congress passed a one-sentence provision that "section 1915(a) of title 28, United States Code, is amended by deleting the word 'citizen' and inserting in place thereof the word 'person.'" Pub.L. 86-320, 73 Stat. 590. For this amendment, the sole reason cited in the legislative history was to extend the statutory benefits to aliens.

FN2. The House Report noted three reasons for "extend[ing] the same privilege of proceedings in forma pauperis as is now afforded citizens." H.R.Rep. No. 650, 86th Cong., 1st Sess., 2 (1959). First, "[i]t is the opinion of the Department of Justice that this proposal would be consonant with the ideas or policies of the United States." *Ibid.* Second, "the Judicial Conference of the United States in recommending this legislation pointed out that the distinction between citizens and aliens as contained in existing law may be unconstitutional." *Ibid.* Third, "it may also be in violation of various treaties entered into by the United States with foreign countries which guarantees [*sic*] to their citizens access of the courts of the United States on the same terms as American citizens." *Ibid.;* see also S.Rep. No. 947, 86th Cong., 1st Sess., 2, U.S.Code & Admin.News 1959, pp. 2663, 2664 (1959) (quoting the portion of the House Report containing these three reasons). None of these reasons supports extension of § 1915 benefits to artificial entities, or suggests that anyone involved with drafting or evaluating this legislation was thinking of such an extension. The House debate on the bill contains a discussion about the deportation of alien criminals, a matter which obviously concerns only natural persons, see 105 Cong.Rec. 13714 (1959) (remarks of Rep. Gross and Rep. Rogers); otherwise, the congressional debates provide no additional information, see *ibid.;  id.,* at 18909 (remarks of Sen. Eastland).

### **720 *199 B

[1] The relevant portion of the Dictionary Act, 1 U.S.C. § 1, provides (as it did in 1959) that
"[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise-

. . . . .

"the wor[d] 'person' ... include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."

See 1 U.S.C. § 1 (1958 ed.). "Context" here means the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts, and this is simply an instance of the word's ordinary meaning: "[t]he part or parts of a discourse preceding or following a 'text' or passage or a word, or so intimately associated with it as to throw light upon its meaning." Webster's New International Dictionary 576 (2d ed. 1942). While "context" can

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

113 S.Ct. 716
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
**(Cite as: 506 U.S. 194, 113 S.Ct. 716)**

Page 5

carry a secondary meaning of "[a]ssociated surroundings, whether material or mental," *ibid.*, we doubt that the broader sense applies here. The Dictionary Act uses "context" to give an *200 instruction about how to "determin[e] the meaning of a[n] Act of Congress," a purpose suggesting the primary sense. If Congress had meant to point further afield, as to legislative history, for example, it would have been natural to use a more spacious phrase, like "evidence of congressional intent," in place of "context."

[2] If "context" thus has a narrow compass, the "indication" contemplated by 1 U.S.C. § 1 has a broader one. The Dictionary Act's very reference to contextual "indication" bespeaks something more than an express contrary definition, and courts would hardly need direction where Congress had thought to include an express, specialized definition for the purpose of a particular Act; ordinary rules of statutory construction would prefer the specific definition over the Dictionary Act's general one. Where a court needs help is in the awkward case where Congress provides no particular definition, but the definition in 1 U.S.C. § 1 seems not to fit. There it is that the qualification "unless the context indicates otherwise" has a real job to do, in excusing the court from forcing a square peg into a round hole.

The point at which the indication of particular meaning becomes insistent enough to excuse the poor fit is of course a matter of judgment, but one can say that "indicates" certainly imposes less of a burden than, say, "requires" or "necessitates." One can also say that this exception from the general rule would be superfluous if the context "indicate[d] otherwise" only when use of the general definition would be incongruous enough to invoke the common mandate of statutory construction to avoid absurd results. See, *e.g.,* *201 *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 496, 111 S.Ct. 888, 898, 112 L.Ed.2d 1005 (1991) ("It is presumable that Congress legislates with knowledge of our basic rules of statutory construction"). In fine, a contrary "indication" may raise a specter short of inanity, and with something less than syllogistic force.

FN3. This rule has been applied throughout the history of 1 U.S.C. § 1 and its predecessors. See, *e.g., Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 510-511, 109 S.Ct. 1981, 1984-1985, 104 L.Ed.2d 557 (1989); *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978); *Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965); *Helvering v. Hammel,* 311 U.S. 504, 510-511, 61 S.Ct. 368, 371-372, 85 L.Ed. 303 (1941); *United States v. Katz,* 271 U.S. 354, 357, 46 S.Ct. 513, 514, 70 L.Ed. 986 (1926); *Caminetti v. United States,* 242 U.S. 470, 490, 37 S.Ct. 192, 196, 61 L.Ed. 442 (1917); *United States v. Kirby,* 7 Wall. 482, 486-487, 19 L.Ed. 278 (1869).

III

[3] Four contextual features indicate that "person" in § 1915(a) refers only to individuals, the first being the provision of § 1915(d) **721 that "[t]he court *may* request an attorney to represent any such person unable to employ counsel." (Emphasis added.) This permissive language suggests that Congress assumed the court would in many cases not "request" counsel, see *Mallard v. United States District Court, Southern District of Iowa,* 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) (holding that § 1915(d) does not authorize mandatory appointments of counsel), leaving the "person" proceeding *in forma pauperis* to conduct litigation on his own behalf. Underlying this congressional assumption are probably two others: that the "person" in question enjoys the legal capacity to appear before a court for the purpose of seeking such benefits as appointment of counsel without being represented by professional counsel beforehand, and likewise enjoys the capacity to litigate without counsel if the court chooses to provide none, in the exercise of the discretion apparently conferred by the permissive language. The state of the law, however, leaves it highly unlikely that Congress would have made either assumption about an artificial entity like an association, and thus just as unlikely that "person" in § 1915 was meant to cover more than individuals. It has been the law *202 for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel. *Osborn v. President of Bank of United States,* 9 Wheat. 738, 829, 6 L.Ed. 204 (1824); see *Turner v. American Bar Assn.,* 407 F.Supp. 451, 476 (ND Tex. 1975) (citing the "long line of cases" from 1824 to the present holding that a corporation may only be represented by licensed counsel), affirmance order *sub nom. Taylor v. Montgomery,* 539 F.2d 715 (Table) (CA7 1976), and aff'd *sub nom. Pilla v. American Bar Assn.,* 542 F.2d 56 (CA8 1976). As the courts have recognized, the rationale for that rule applies equally to all artificial entities. Thus, save in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654, providing that "parties may plead and conduct their own cases personally or by counsel," does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney. See, e.g., Eagle Associates v. Bank of Montreal, 926 F.2d 1305 (CA2 1991) (partnership); Taylor v. Knapp, 871 F.2d 803, 806 (CA9) (nonprofit corporation formed by prison inmates), cert. denied, 493 U.S. 868, 110 S.Ct. 192, 107 L.Ed.2d 146 (1989); Jones v. Niagara Frontier Transportation Authority, 722 F.2d 20, 22 (CA2 1983) (corporation); Richdel, Inc. v. Sunspool Corp., 699 F.2d 1366 (CA Fed.1983) (per curiam) (corporation); *203 Southwest Express Co. v. ICC, 670 F.2d 53, 55 CA5 1982) (per curiam) (corporation); In re Victor Publishers, Inc., 545 F.2d 285, 286 (CA1 1976) (per curiam) (corporation); Strong Delivery Ministry Assn. v. Board of Appeals of Cook County, 543 F.2d 32, 34 (CA7 1976) (per curiam) (corporation); United States v. 9.19 Acres of Land, 416 F.2d 1244, 1245 (CA6 1969) (per curiam) (corporation); Simbraw, Inc. v. United States, 367 F.2d 373, 374 (CA3 1966) (per curiam) (corporation). Viewing **722 § 1915(d) against the background of this tradition, its assumption that litigants proceeding in forma pauperis may represent themselves tells us that Congress was thinking in terms of "persons" who could petition courts themselves and appear pro se, that is, of natural persons only.

> FN4. This assumption reflects a reality well known within the legal community. See, e.g., Turner, When Prisoners Sue: A Study of Prisoner Section 1983 Suits in the Federal Courts, 92 Harv.L.Rev. 610, 617 (1979) (study of 42 U.S.C. § 1983 cases filed by prisoners in five districts found that the "overwhelming majority" of cases were filed in forma pauperis, and that "almost all" the cases were filed pro se).

> FN5. Two federal cases cited by respondent are the only two, of which we are aware, to hold that artificial entities may be represented by persons who are not licensed attorneys: United States v. Reeves, 431 F.2d 1187 (CA9 1970) (per curiam) (partner can appear on behalf of a partnership), and In re Holliday's Tax Services, Inc., 417 F.Supp. 182 (EDNY 1976) (sole shareholder can appear for a closely held corporation), affirmance order sub nom. Holliday's Tax Services, Inc. v. Hauptman, 614 F.2d 1287 (Table) (CA2 1979). These cases neither follow federal precedent, nor have themselves been followed. See, e.g., Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1309-1310 (CA2 1991) (criticizing and refusing to follow Reeves ); Jones v. Niagara Frontier Transportation Authority, 722 F.2d 20, 22, n. 3 (CA2 1983) (distinguishing and narrowing Holliday's Tax Services ).

The second revealing feature of § 1915(d) is its description of the affidavit required by § 1915(a) as an "allegation of poverty." Poverty, in its primary sense, is a human condition, to be "[w]anting in material riches or goods; lacking in the comforts of life; needy," Webster's New International Dictionary 1919 (2d ed. 1942), and it was in just such distinctly human terms that this Court had established the standard of eligibility long before Congress considered extending in forma pauperis treatment from "citizens" to "persons." As we first said in 1948, "[w]e think an affidavit is sufficient which states that one cannot because of his poverty 'pay or give security for the costs ... and still be able to provide' himself and dependents 'with the necessities of life.' " Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43. But artificial entities do not fit this description. Whatever the state of its treasury, an association or corporation cannot be said to "lac[k] the comforts of life," any more than one can sensibly ask whether it can provide itself, let alone its dependents, with life's "necessities." Artificial entities may be insolvent, but they are not well spoken of as "poor." So eccentric a description is not lightly to be imputed to Congress.

*204 The third clue is much like the second. Section 1915(a) authorizes the courts to allow litigation without the prepayment of fees, costs, or security "by a person who makes affidavit that he is unable to pay such costs or give security therefor," and requires that the affidavit also "state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress." Because artificial entities cannot take oaths, they cannot make affidavits. See, e.g., In re Empire Refining Co., 1 F.Supp. 548, 549 (SD Cal.1932) ("It is, of course, conceded that a corporation cannot make an affidavit in its corporate name. It is an inanimate thing incapable of voicing an oath"); Moya Enterprises, Inc. v. Harry Anderson Trucking, Inc., 162 Ga.App. 39, 290 S.E.2d 145 (1982); Strand Restaurant Co. v. Parks Engineering

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

113 S.Ct. 716                                                                                                           Page 7
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
**(Cite as: 506 U.S. 194, 113 S.Ct. 716)**

Co., 91 A.2d 711 (D.C.1952); 9A T. Bjur & C. Slezak, Fletcher Cyclopedia of Law of Private Corporations § 4629 (Perm. ed. 1992) ("A document purporting to be the affidavit of a corporation is void, since a corporation cannot make a sworn statement") (footnote omitted).

Of course, it is true that courts have often coupled this recognition of a corporation's incapacity to make an affidavit with a willingness to accept the affidavit of a corporate officer or agent on its behalf even when the applicable statute makes no express provision for doing so. See, *e.g., In re Ben Weiss Co.,* 271 F.2d 234 (CA7 1959). Any such accommodation would raise at least three difficulties in this particular statutory context, however. There would be, first, the frequent problem of establishing an affiant's authorization. The artificial entities covered by "person" in the Dictionary Act include not only corporations, for which lines of authority are well established by state law, but also amorphous legal creatures like the unincorporated association before us here. A court may not as readily determine whether a member of such an association, even a member styled as "president" or "chairman" or whatnot, has any business purporting to bind it by affidavit. Next, some weight should probably be given *205 to the requirement of § 1915(a) that the affidavit state the "affiant's belief that *he* is entitled to redress" (emphasis added). "He," read naturally, refers to the "affiant" as the person claiming *in forma pauperis* entitlement. If the affiant is an agent making an affidavit on behalf of an artificial entity, however, it would wrench the rules of grammar to read "he" as referring to **723 the entity. Finally, and most significantly, the affidavit requirement cannot serve its deterrent function fully when applied to artificial entities. We said in *Adkins* that "[o]ne who makes this affidavit exposes himself 'to the pains of perjury in a case of bad faith.' ... This constitutes a sanction important in protection of the public against a false or fraudulent invocation of the statute's benefits." *Adkins, supra,* 335 U.S., at 338, 69 S.Ct., at 89 (quoting *Pothier v. Rodman,* 261 U.S. 307, 309, 43 S.Ct. 374, 375, 67 L.Ed. 670 (1923)). The perjury sanction thus serves to protect the public against misuse of public funds by a litigant with adequate funds of his own, and against the filing of "frivolous or malicious" lawsuits funded from the public purse. 28 U.S.C. §§ 1915(a), 1915(d). The force of these sanctions pales when applied to artificial persons, however. Natural persons can be imprisoned for perjury, but artificial entities can only be fined. And while a monetary sanction may mean something to an entity whose agent has lied about its ability to pay costs or security, it has no teeth *206 when the lie goes only to belief of entitlement to redress. So far, then, as Congress assumed that the threat of a perjury conviction could deter an impoverished "person" from filing a frivolous or malicious lawsuit, it probably assumed that the person was an individual.

> FN6. On occasion, when a party is a minor or incompetent, or fails to cooperate with appointed counsel, or is for some other reason unable to file a timely affidavit, we will accept an affidavit from a guardian ad litem or an attorney. By accepting such an affidavit, we bend the requirement that the affiant state that "he" is indigent and that "he" believes "he" is entitled to relief. In such a case, however, it is clear that the party himself is a "person" within the meaning of § 1915. The only question is whether Congress intended to deny § 1915 benefits to such a person who for some reason peculiar to him is disabled from filing an affidavit. It is quite a different question whether Congress intended to extend § 1915 to entities that, by their nature, could never meet the statute's requirements.

> FN7. We are not ignoring the fact that the individual who made the affidavit as the entity's agent could still be prosecuted for perjury. However, this is clearly a "second-best" solution; the law does not normally presume that corporate misbehavior can adequately be deterred solely by threatening to punish individual agents.

The fourth clue to congressional understanding is the failure of § 1915 even to hint at a resolution of the issues raised by applying an "inability to pay" standard to artificial entities. It is true, of course, that because artificial entities have no use for food or the other "necessities of life," Congress could not have intended the courts to apply the traditional "inability to pay" criterion to such entities. Yet no alternative standard can be discerned in the language of § 1915, and we can find no obvious analogy to the "necessities of life" in the organizational context. Although the most promising candidate might seem to be commercial-law "insolvency," commercial law actually knows a number of different insolvency concepts. See, *e.g.,* 11 U.S.C. § 101(32) (1988 ed., Supp.III) (defining insolvency as used in the Federal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

113 S.Ct. 716
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
(Cite as: 506 U.S. 194, 113 S.Ct. 716)

Page 8

Bankruptcy Code); *Kreps v. Commissioner,* 351 F.2d 1, 9 (CA2 1965) (discussing a type of "equity" insolvency); Uniform Commercial Code § 1-201(23), 1 U.L.A. 65 (1989) (combining three different types of insolvency). In any event, since it is common knowledge that corporations can often perfectly well pay court costs and retain paid legal counsel in spite of being temporarily "insolvent" under any or all of these definitions, it is far from clear that corporate insolvency is appropriately analogous to individual indigency.

> FN8. One plausible motive for Congress to include artificial entities within the meaning of "person" in § 1915 would be to aid organizations in bankruptcy proceedings. But the fact that the law has been settled for almost 20 years that § 1915(a) does not apply to bankruptcy proceedings, see *United States v. Kras,* 409 U.S. 434, 440, 93 S.Ct. 631, 635, 34 L.Ed.2d 626 (1973), would seem to foreclose speculation about such a motive.

*207 If § 1915 yields no "inability to pay" standard applicable to artificial entities, neither does it guide courts in determining **724 when to "pierce the veil" of the entity, that is, when to look beyond the entity to its owners or members in determining ability to pay. Because courts would necessarily have to do just this to avoid abuse, congressional silence on the subject indicates that Congress simply was not thinking in terms of granting *in forma pauperis* status to artificial entities.

While the courts that have nonetheless held § 1915 applicable to artificial entities have devised their own tests for telling when to "pierce the veil" for a look at individual members or owners, none of their tests is based on the language of § 1915 or on any assumption implicit in it. For example, the leading opinion on the subject, a dissent from a majority opinion that never reached the issue, appears to frame the issue as whether the individual shareholders of a corporation "have adopted the corporate form as a subterfuge to avoid the payment of court costs." *S.O.U.P., Inc. v. FTC,* 146 U.S.App.D.C. 66, 68, 449 F.2d 1142, 1144 (1971) (Bazelon, C.J., dissenting) (footnote omitted). While this test certainly emphasizes why we could hardly hold that a court should never look beyond the organization to its individuals, it stems from nothing in § 1915 suggesting that entities claiming to have slight assets should be treated *in forma pauperis* unless they were organized to cheat the courts.

> FN9. Two other decisions allowing organizations to proceed *in forma pauperis* appear to place importance on the "public interest" character of the organization or the litigation in question. See *River Valley, Inc. v. Dubuque County,* 63 F.R.D. 123, 125 (ND Iowa 1974) (noting that the corporation at issue "was formed ... for the purpose of assisting the poor and underprivileged"); *Harlem River Consumers Cooperative, Inc. v. Associated Grocers of Harlem, Inc.,* 71 F.R.D. 93, 96 (SDNY 1976) (finding that "[t]here is a public interest quality to the stated goal for which the corporation was formed" and that "there is a public interest aspect to any private suit for treble damages under the antitrust laws"). The language of § 1915, however, suggests indifference to the character of the litigant and to the type of litigation pursued, so long as it is not frivolous or malicious.

*208 The Council makes the argument, apparently accepted by the court below, that however difficult it might be to formulate comprehensive rules for determining organizational eligibility to file *in forma pauperis,* we are excused from facing the difficulty in this case, because the Council's circumstances would make it eligible under any set of rules. But we cannot construe the statute very well by sidestepping the implications of deciding one way or the other, and even if we did assume that some narrow band of eligibility escaped the contrary contextual indicators, it is not wholly clear that the Council could conclusively establish *in forma pauperis* entitlement. It is not obvious, for example, why the Council's inability to maintain a separate bank account should conclusively establish pauper status under § 1915, any more than a bank account with a one-cent balance would be conclusive. Account or no account, the Council, like thousands of other associations, appears to have no source of revenue but the donations of its members. If members with funds must donate to pay court fees, why should it make a conclusive legal difference whether they are able to donate indirectly through an intermediate bank account, or through one member who transmits donations by making a payment to the federal court when the Council files a complaint? Thus, recognizing the possibility of an organizational *in forma pauperis* status even in the supposedly "extreme" case of the Council would force us to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

113 S.Ct. 716 Page 9
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
(Cite as: 506 U.S. 194, 113 S.Ct. 716)

delve into the difficult issues of policy and administration without any guidance from § 1915. This context*209 of congressional silence on these issues indicates the natural character of a § 1915 "person."

> FN10. There is no evidence in the record suggesting that an inmate would not be allowed to donate part of the Council's court costs directly from his personal account to the court, or that the inmates could not coordinate such donations.
>
> FN11. Justice THOMAS asserts that, by drawing an inference from congressional silence, we "depar[t] from the definition of 'context' set out at the beginning of [our] opinion." Post, at 731, n. 9. It is not from some dimensionless void, however, that we draw our conclusion. Rather, it is from a pointed silence in the face of obvious problems created by applying to artificial entities the text of § 1915, in this case the requirement that the person seeking in forma pauperis status be "unable to pay" costs, fees, and security. As the dissent is willing to affirm without itself addressing these problems, it is apparently confident that workable, uncontroversial solutions can be drawn from the statute. Yet the rule it would affirm (that an unincorporated association is "unable to pay" whenever its "chairman" says that it cannot maintain a bank account in its own name) does not inspire confidence.

**725 IV

We do not forget our cases holding that the broad definition of "person" in 1 U.S.C. § 1 applies in spite of incongruities as strong, or stronger, than those produced by the four contextual features we have noted in § 1915. But in each of these cases, some other aspect of statutory context independently indicated the broad reading. In Wilson v. Omaha Tribe, 442 U.S. 653, 666, 99 S.Ct. 2529, 2537, 61 L.Ed.2d 153 (1979), for example, we held that a statutory burden of proof on a "white person" involved in a property dispute with an Indian applied to the artificial "persons" listed in the Dictionary Act as well as to individuals. Because a wholly legal creature has no color, and belongs to no race, the use of the adjective "white" to describe a "person" is one of the strongest contextual indicators imaginable that "person" covers only individuals, and if there had been no more to the context at issue in Omaha Tribe, we would have to concede that our decision in that case is inconsistent with our conclusion here. But Omaha Tribe involved another important, countervailing contextual indication. The larger context of the whole statute and other laws *210 related to it revealed that the statute's purpose was "to protect Indians from claims made by non-Indian squatters on their lands," id., at 665, 99 S.Ct., at 2537, and we recognized that construing the disability placed on "white persons" by the statute as extending only to individuals would virtually frustrate this purpose. "[I]n terms of the protective purposes of the Acts of which [the property dispute provision was] a part, it would make little sense to construe the provision so that individuals, otherwise subject to its burdens, could escape its reach merely by incorporating and carrying on business as usual." Id., at 666, 99 S.Ct., at 2537.

United States v. A & P Trucking Co., 358 U.S. 121, 79 S.Ct. 203, 3 L.Ed.2d 165 (1958), is a comparable case, involving two criminal statutes applying to truckers, one of which expressly applied to partnerships, and the other of which imposed criminal liability on "whoever" knowingly violated Interstate Commerce Commission regulations on transporting dangerous articles. The issue was whether partnerships could violate the statutes. We noted that the statutes required proof of knowing violations, and that a partnership at common law was deemed not to be a separate entity for purposes of suit. Id., at 124, 79 S.Ct., at 206. Nonetheless, given that "[t]he purpose of both statutes [was] clear: to ensure compliance by motor carriers, among others, with safety and other requirements laid down by the Interstate Commerce Commission in the exercise of its statutory duty to regulate the operations of interstate carriers for hire," id., at 123-124, 79 S.Ct., at 206, we concluded that it would make no sense if motor carriers could avoid criminal liability for violating the trucking regulations "merely because of the form under which they were organized to do business," id., at 124, 79 S.Ct., at 206 (footnote omitted).

Thus, in both Omaha Tribe and A & P Trucking Co., we found that the statutes in question manifested a purpose that would be substantially frustrated if we did not construe the statute to reach artificial entities. Section 1915, however, manifests no such single purpose subject to substantial frustration*211 by limiting the statutory reach to natural persons. Denying artificial entities the benefits of § 1915 will

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

113 S.Ct. 716
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
**(Cite as: 506 U.S. 194, 113 S.Ct. 716)**

Page 10

not in any sense render nugatory the benefits that § 1915 still provides to individuals. Thus, *Omaha Tribe* **726 and *A & P Trucking Co.* confirm our focus on context, but turned on contextual indicators not present here.

> FN12. Justice THOMAS suggests that our reference to statutory purpose here is inconsistent with our interpretation of "context" in 1 U.S.C. § 1. *Post,* at 727, n. 1. A focus on statutory text, however, does not preclude reasoning from statutory purpose. To the contrary, since "[s]tatutes ... are not inert exercises in literary composition[, but] instruments of government," *United States v. Shirey,* 359 U.S. 255, 260, 79 S.Ct. 746, 749, 3 L.Ed.2d 789 (1959) (per Frankfurter, J.), a statute's meaning is inextricably intertwined with its purpose, and we will look to statutory text to determine purpose because "the purpose of an enactment is embedded in its words even though it is not always pedantically expressed in words," *id., at 261, 79 S.Ct., at 749.*

V

[4] The Council argues that denying it *in forma pauperis* status would place an unconstitutional burden on its members' First Amendment rights to associate, to avoid which we should construe § 1915 broadly. See, *e.g., NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 500, 99 S.Ct. 1313, 1318, 59 L.Ed.2d 533 (1979) ("[A]n Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available"). We find no merit in this argument. It is true that to file a suit *in forma pauperis,* not in the Council's name, as such, but under the title *"X, Y, and Z, known as the Council v. Rowland,"* X, Y, and Z would each need to file an affidavit stating that he met the indigency requirements of § 1915. Nothing, however, in § 1915 suggests that the requirements would be less burdensome if the suit were titled *"The Council v. Rowland";* even if we held that an association could proceed *in forma pauperis,* our prior discussion shows that a court could hardly ignore the assets of the association's members in making the indigency determination. Because the extension of § 1915 to artificial entities need not lighten its practical*212 requirements, the limitation of § 1915 to individuals puts no unconstitutional burden on the right to associate in the manner suggested.

VI

The judgment of the Court of Appeals is reversed, and the case is remanded with instructions that the case be remanded to the District Court, where the motion for leave to file *in forma pauperis* must be denied.

*So ordered.*

Justice KENNEDY, dissenting.
In determining whether the context of a statute indicates an intent to confine a word to a meaning more narrow than the one contained in the Dictionary Act, 1 U.S.C. § 1, it seems to me permissible to ask whether the broad Dictionary Act definition is compatible with a workable construction of the statute. To the extent the Court attempts to uncover significant practical barriers to including artificial entities within 28 U.S.C. § 1915, its analysis is quite appropriate and ought not to be condemned as policymaking. The problem, in my view, is that the Court does not succeed in this attempt. As the dissenting opinion by Justice THOMAS well illustrates, the broad definition of "person," the one the Dictionary Act tells us to prefer, is not inconsistent with a commonsense, workable implementation of § 1915.

With this observation, I join Justice THOMAS' dissenting opinion.

Justice THOMAS, with whom Justice BLACKMUN, Justice STEVENS, and Justice KENNEDY join, dissenting.
The parties agree that the interpretive point of departure in deciding whether an association is a "person" for purposes of the *in forma pauperis* statute, 28 U.S.C. § 1915, is the first section of the United States Code. The question presented in this case may thus be formulated as follows: Must the presumption codified in 1 U.S.C. § 1-namely, that "[i]n *213 determining the meaning of any Act of Congress," the word "person" should be **727 construed to include an association-be given effect in determining the meaning of the *in forma pauperis* statute, or has the presumption been overcome because the context "indicates otherwise"? The answer to that question ultimately turns on the meaning of the phrase "unless the context indicates otherwise." In my view, the Court's holding rests on an impermissibly broad reading of that language. I see no basis for concluding that an association is not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

113 S.Ct. 716 Page 11
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
(Cite as: 506 U.S. 194, 113 S.Ct. 716)

entitled to *in forma pauperis* status.

The Court states that the word "context" in 1 U.S.C. § 1 "means the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts." *Ante,* at 720. The Court then goes on to say that the word "indicates" has a broader scope than the word "context"; that it "imposes less of a burden than, say, 'requires' or 'necessitates' "; and that "a contrary 'indication' may raise a specter short of inanity, and with something less than syllogistic force." *Ante,* at 720. I share the Court's understanding *214 of the word "context." I do not share the Court's understanding of the word "indicates," however, because its gloss on that word apparently permits (and perhaps even requires) courts to look beyond the words of a statute, and to consider the policy judgments on which those words may or may not be based. (It certainly enables the Court to do so in this case.) I agree that the exception to the rule of construction codified in 1 U.S.C. § 1 is not susceptible of precise definition, and that determining whether "the context indicates otherwise" in any given case is necessarily "a matter of judgment." *Ante,* at 720. Whatever "unless the context indicates otherwise" means, however, it cannot mean "unless there are sound policy reasons for concluding otherwise."

FN1. I should note, however, that the majority departs from that understanding in its discussion of *Wilson v. Omaha Tribe, 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979),* which presented the question whether a corporation is a "person" for purposes of a statute apportioning the burden of proof in property disputes between an Indian and a "white person." Instead of relying on the text surrounding the word "person," as it purports to do in this case, the majority defends *Omaha Tribe* on the ground that a narrow construction of "person" would frustrate the "purpose" of the statute at issue in that case. *Ante,* at 725. This is perhaps understandable, since it would be exceedingly difficult to defend *Omaha Tribe* on textual grounds. But if the word "context" in 1 U.S.C. § 1 refers only to the text that surrounds a word, either *Omaha Tribe* was wrongly decided or this case has been wrongly decided. They cannot both be correct. A strong argument can be made that the Court misinterpreted 1 U.S.C. § 1 in *Omaha Tribe.* But if it did not-if it was correct in holding that the statutory term "white person" includes a corporation (because the "context" does not "indicat[e] otherwise")-the conclusion that an association is a "person" for *in forma pauperis* purposes is inescapable. There is no language surrounding the word "person" in § 1915 that is even remotely comparable to the word "white," which, as the majority observes, is "one of the strongest contextual indicators imaginable," since a corporation "has no color, and belongs to no race." *Ante,* at 725.

I

The *in forma pauperis* statute authorizes courts to allow "[1] the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who [2] makes affidavit that he is [3] unable to pay such costs or give security therefor." 28 U.S.C. § 1915(a). Section 1915(a) thus contemplates that the "person" who is entitled to the benefits of the provision will have three characteristics: He will have the capacity to sue or be sued, to make an affidavit, and to be unable to pay court costs. An association clearly has the capacity to do each of these things, and that, in my view, should be the end of the matter.

An artificial entity has the capacity to sue or be sued in federal court as long as it has that capacity under state law (and, in some circumstances, even when it does not). See Fed.Rule Civ.Proc. 17(b). An artificial entity**728 can make *215 an affidavit through an agent. See, *e.g., Davidson v. Jones, Sullivan & Jones,* 196 S.W. 571, 572 (Tex.Civ.App.1917) (partnership); *Sime v. Hunter,* 50 Cal.App. 629, 634, 195 P. 935, 937 (1920) (partnership); *In re McGill's Estate,* 52 Nev. 35, 44, 280 P. 321, 323 (1929) (corporation); *Payne v. Civil Service Employees Assn., Inc.,* 27 Misc.2d 1006, 1006-1007, 218 N.Y.S.2d 871, 872 (Sup.) (association), aff'd, 15 App.Div.2d 265, 222 N.Y.S.2d 725 (1961); *Kepl v. Manzanita Corp.,* 246 Or. 170, 178, 424 P.2d 674, 678 (1967) (corporation); *Federal Land Bank of St. Paul v. Anderson,* 401 N.W.2d 709, 712 (N.D.1987) (corporation). And an artificial entity, like any other litigant, can lack the wherewithal to pay costs.

FN2. Under Rule 17(b), the capacity of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

corporation to sue or be sued is determined by the law under which it was organized, and the capacity of an unincorporated association is determined by the law of the State in which the district court is located. An unincorporated association that lacks the capacity to sue or be sued under the law of the forum State may still litigate in federal court when the action is brought for the enforcement of a federal right.

FN3. Before acknowledging that an agent can make an affidavit on behalf of an artificial entity, the majority pauses to say that such an entity cannot make an affidavit itself. *Ante,* at 722. I suppose this distinction has some metaphysical significance, but I fail to see how it is otherwise relevant, since *any* action an artificial entity takes must be done through an agent. (It is noteworthy that two of the cases cited by the majority for the proposition that an artificial entity cannot make an affidavit recognize that an agent can make an affidavit on an entity's behalf. See *In re Empire Refining Co.,* 1 F.Supp. 548, 549 (SD Cal.1932) ("On its behalf some representative must speak"); *Strand Restaurant Co. v. Parks Engineering Co.,* 91 A.2d 711, 712 (D.C.1952).) In any event, there is authority for the view that at least under some circumstances, there is no distinction at all-theoretical or otherwise- between an affidavit made on behalf of an artificial entity and an affidavit of the entity itself. See *Utah Farm Production Credit Assn. v. Watts,* 737 P.2d 154, 157 (Utah 1987) ("Where an affidavit is made by an officer, it is generally considered to be the affidavit of the corporation itself"); *American Soda Fountain Co. v. Stolzenbach,* 75 N.J.L. 721, 734, 68 A. 1078, 1083 (1908) ("[W]here it becomes necessary for a corporation ... to make an affidavit, the affidavit may be made in its behalf by an officer thereof ...; ... such affidavit is, in legal contemplation, the affidavit of the corporation, and not of an agent").

Permitting artificial entities to proceed *in forma pauperis* may be unwise, and it may be an inefficient use of the Government's limited resources, but I see nothing in the text of *216 the *in forma pauperis* statute indicating that Congress has chosen to exclude such entities from the benefits of that law. While the "context indicates" that an artificial entity is not a "person" for purposes of a statute providing benefits to individuals with disabilities, the same cannot be said of 28 U.S.C. § 1915, which provides benefits to impecunious litigants-a class encompassing both natural and artificial "persons."

FN4. See, *e.g.,* 42 U.S.C. § 6001(5) (1988 Ed., Supp.II) ("The term 'developmental disability' means a severe, chronic disability of a person"); 2 U.S.C. § 135b(a) ("[P]reference shall at all times be given to the needs of the blind and of the other physically handicapped persons").

FN5. The context also "indicates otherwise" in statutes dealing with marriage, see, *e.g.,* 38 U.S.C. § 101(31) ("The term 'spouse' means a person of the opposite sex who is a wife or husband"); § 103(a) ("any claim filed by a person as the widow or widower of a veteran"), the military, see, *e.g.,* 18 U.S.C. § 244 ("any person wearing the uniform of any of the armed forces of the United States"); 38 U.S.C. § 101(2) ("The term 'veteran' means a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable"), drug addiction, see, *e.g.,* 42 U.S.C. § 201(k) ("The term 'addict' means any person who habitually uses any habit-forming narcotic drugs"), drunk driving, see, *e.g.,* 18 U.S.C. § 3118(a) (1988 Ed., Supp.II) ("such person's driving while under the influence of a drug or alcohol"), kidnaping, see, *e.g.,* § 1201(a) ("[w]hoever unlawfully seizes, confines, ... kidnaps, abducts, or carries away and holds for ransom ... any person"), sexual assault, see, *e.g.,* § 2241(a) ("[w]hoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly causes another person to engage in a sexual act"), language, see, *e.g.,* 28 U.S.C. § 1827(b)(1) ("persons who speak only or primarily a language other than the English language"), jury duty, see, *e.g.,* § 1865(a) ("The chief judge ... shall determine ... whether a person is unqualified for, or exempt, or to be excused from jury service"), "missing persons," see, *e.g.,* § 534(a)(3) ("The Attorney General shall ... acquire, collect, classify, and preserve any information which would assist in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

113 S.Ct. 716 Page 13
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
(Cite as: 506 U.S. 194, 113 S.Ct. 716)

location of any missing person ... and provide confirmation as to any entry for such a person to the parent, legal guardian, or next of kin of that person"), and "homeless persons," see, e.g., 42 U.S.C. § 12705(b)(2)(C) (1988 Ed., Supp.II) ("helping homeless persons make the transition to permanent housing and independent living").

**729 *217 II

The Court's holding rests on the view that § 1915 has four "contextual features," *ante,* at 720, indicating that only a natural person is entitled to *in forma pauperis* status. These "features" include a few select words in § 1915 and a number of practical problems that may arise when artificial entities seek to proceed *in forma pauperis*. I do not believe that § 1915 contains any language indicating that an association is not a "person" for purposes of that provision, and I do not think it is appropriate to rely upon what are at bottom policy considerations in deciding whether "the context indicates otherwise." In my view, none of the "contextual features" discussed by the Court, either alone or in combination with the others, can overcome the statutory presumption that an association is a "person."

A

The first "contextual feature" identified by the Court is the portion of the *in forma pauperis* statute providing that "[t]he court may request an attorney to represent any such person unable to employ counsel." 28 U.S.C. § 1915(d). Because a **corporation**, partnership, or association may appear in federal court only through licensed counsel, and because the permissive language of § 1915(d) suggests that Congress assumed that there would be many cases in which the court would not appoint counsel, Congress, the Court says, "was thinking in terms of 'persons' who could petition courts themselves and appear *pro se*, that is, of natural persons only." *Ante,* at 722.

This does not follow at all. Congress' use of the word "may" is entirely consistent with an intent to include artificial entities among those "persons" entitled to the benefits of the *in forma pauperis* statute, and it does not necessarily rest on an "assumption that litigants proceeding *in forma pauperis* may represent themselves." *Ibid.* Section 1915 gives courts discretion both with respect to granting *in *218 forma pauperis* status and with respect to appointing counsel. When a natural person seeks the benefits of § 1915, a court will often allow that person to proceed *in forma pauperis* but refuse to appoint counsel. Under such circumstances, the person may either obtain counsel elsewhere or proceed *pro se*. When an *artificial* person seeks the benefits of § 1915, a court might likewise permit that "person" to proceed *in forma pauperis* but refuse to appoint counsel. Under these circumstances, the artificial person has fewer options than a natural person: It can either obtain counsel elsewhere or lose the opportunity to appear in federal court. That an artificial entity without funds may in some circumstances be unable to have its case heard in federal court, however, does not prove that Congress intended to exclude such an entity from the benefits of the *in forma pauperis* statute. An artificial entity's inability to proceed *pro se* bears upon the *extent* to which such an entity may benefit from § 1915, but it has no bearing upon *whether* it may benefit. And that, after all, is the question presented in this case.

The second "contextual feature" on which the Court focuses is the use of the word "poverty" in § 1915(d). "Poverty," in the Court's view, is a "human condition"; artificial entities "may be insolvent, but they are not well spoken of as 'poor.'" *Ante,* at 722.

I am not so sure. "Poverty" may well be a human condition in its "primary sense," **730 *ibid.,* but I doubt that using the word in connection with an artificial entity departs in any significant way from settled principles of English usage. *219 One certainly need not search long or far to find examples of the use of "poor" in connection with nonhuman entities-and, indeed, in connection with the very entities listed in 1 U.S.C. § 1. No less a figure than Justice Holmes had occasion to write that the issuance of stock dividends renders a corporation "no poorer" than it was before their distribution, *Towne v. Eisner,* 245 U.S. 418, 426, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918), and other judges have used the word "poor" (or one of its derivatives) in a similar fashion, see, e.g., *Ordinetz v. Springfield Family Center, Inc.,* 142 Vt. 466, 468, 457 A.2d 282, 283 (1983) ("[A] nonprofit corporation may be ... wealthy or impoverished"); *In re Whitley v. Klauber,* 51 N.Y.2d 555, 579, 416 N.E.2d 569, 581 (1980) (Fuchsberg, J., dissenting) ("[T]he corporation is no richer or poorer for the transaction"). More important for our purposes, *Congress itself* has used the word "poor" to describe entities other than natural persons, referring in at least two provisions of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

113 S.Ct. 716
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
(Cite as: 506 U.S. 194, 113 S.Ct. 716)

Page 14

United States Code to the world's "poorest countries"-a term that is used as a synonym for the least developed of the so-called "developing" countries. See 22 U.S.C. §§ 262p-4f(a)(3), 2151d(d)(4). If Congress has seen fit to describe a country as "poor," I see no reason for concluding that the notion of a "poor" corporation, partnership, or association ought not to be "imputed to Congress." *Ante,* at 722.

FN6. Nor, apparently, are petitioners. At oral argument counsel for petitioners was asked whether the word "poverty" in § 1915(d) "helps" him, since one does not "usually think of a corporation as making an affidavit of poverty." Tr. of Oral Arg. 11. In response, petitioners' counsel said that he "really d[id] believe that a bankrupt corporation could make an affidavit of poverty," *id.,* at 11-12, and conceded that he did not "pin much" on the word "poverty," *id.,* at 12.

FN7. The majority says that we established the "standard of eligibility" for *in forma pauperis* status in "distinctly human terms," *ante,* at 722, in *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), and then quotes the following language from our opinion in that case: "We think an affidavit is sufficient which states that one cannot because of his poverty 'pay or give security for the costs ... and still be able to provide' himself and dependents 'with the necessities of life,' " *id.,* at 339, 69 S.Ct., at 89. But the "standard of eligibility" was cast in "distinctly human terms" in *Adkins* only because the parties seeking *in forma pauperis* status in that case were natural persons, and the language quoted by the Court was taken from their affidavits. See *id.,* at 334, 69 S.Ct., at 86-87. Thus, contrary to the majority's suggestion, *Adkins* established no *a priori* standard of "poverty," and is in no way inconsistent with the view that an artificial entity may be "poor."

*220 B

The third "contextual feature" is § 1915's affidavit requirement, which, in the Court's view, raises a number of "difficulties." *Ante,* at 722. One such "difficulty" is the "problem of establishing an affiant's authorization"; a court may have trouble determining whether a member of an unincorporated association "has any business purporting to bind it by affidavit." *Ibid.* Another "difficulty" is that the affidavit requirement's deterrent function cannot be served "fully" when the litigant is an artificial entity. *Ante,* at 722. This is because "[n]atural persons can be imprisoned for perjury, but artificial entities can only be fined," *ibid.,* and because the possibility of prosecuting the entity's perjurious agent is only a " 'second-best' solution," *ante,* at 723, n. 7.

But these are classic policy considerations-the concerns of a legislature, not a court. Unlike the majority, I am perfectly willing to assume that in adding the word "person" to § 1915 Congress took into account the fact that it might be difficult to determine whether an association's member has the authority to speak on its behalf, and that the possibility of a perjury prosecution might not deter artificial entities sufficiently. In deciding that "the context indicates otherwise," the Court has simply second-guessed Congress' policy judgments.

FN8. The majority also gives "some weight," *ante,* at 722, to § 1915(a)'s requirement that the affidavit state the "affiant's belief that he is entitled to redress." If the "affiant" is "an agent making an affidavit on behalf of an artificial entity," according to the majority, "it would wrench the rules of grammar to read 'he' as referring to the entity." *Ante,* at 722. This may be so, but only if the majority's premise is correct. Since an "affiant" is simply a person who makes an affidavit, see Black's Law Dictionary 79 (4th ed. 1951), and an artificial entity can make an affidavit through an agent, it is hardly unreasonable to understand the word "affiant" in § 1915(a) as a reference not to the agent but to the entity on whose behalf the affidavit is made. Such an understanding is all the more reasonable when the agent is an officer of the entity, since courts have held that under such circumstances the affidavit is considered to be the affidavit of the entity itself. See n. 3, *supra.*

**731 *221 The fourth "contextual feature" identified by the Court is the difficulty of the "issues raised by applying an 'inability to pay' standard to artificial entities," *ante,* at 723, and the difficulty of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

determining "when to look beyond the entity to its owners or members in determining ability to pay," *ante,* at 724. These, too, are policy matters that Congress should be presumed to have considered when it inserted the word "person" into § 1915. As with the difficulties associated with the affidavit requirement, any difficulties associated with the "inability to pay" test are relevant to the issue of why Congress might have chosen to include artificial entities among those "persons" entitled to *in forma pauperis* status, but they are not relevant to the issue of whether Congress has in fact made this choice.

FN9. In discussing the difficulty of determining whether an artificial entity is unable to pay costs, the majority says that the "context of congressional silence on [this] issu[e] indicates the natural character of a § 1915 'person.'" *Ante,* at 724. See also *ante,* at 723. In relying upon "congressional silence" as a "contextual indicator," however, the majority once again departs from the definition of "context" set out at the beginning of its opinion: Rather than relying upon the words surrounding "person," the majority accords significance to the *absence* of words surrounding "person." Cf. n. 1, *supra.* But even if reliance on statutory silence is consistent with the majority's definition of "context," it is not apparent to me why the absence of a statutory "ability to pay" standard for artificial entities demonstrates that the *in forma pauperis* statute covers natural but not artificial persons, since § 1915 contains no such standard for *any* kind of "person."

Petitioners essentially concede that this argument is ultimately one of policy when they say that the "test for indigency" will create "procedural problems" and will have "practical effects ... on the administration of justice." Brief for Petitioners 17. Today the Court accepts this argument, but a unanimous Court rejected a similar argument only four Terms ago in a case involving another provision of the *in* *222 *forma pauperis* statute. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), presented the question whether a complaint that fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is necessarily "frivolous" for purposes of 28 U.S.C. § 1915(d). Rejecting the argument that an affirmative answer to that question would help to lighten the burden that the *in forma pauperis* statute imposes on "efficient judicial administration," we stated that "our role in appraising petitioners' reading of § 1915(d) is not to make policy, but to interpret a statute," and that the proposed reading might be appealing "as a broadbrush means of pruning meritless complaints from the federal docket," but "as a matter of statutory construction it is untenable." 490 U.S., at 326, 109 S.Ct., at 1832.

The Court suggests that a reading of § 1915 under which an artificial entity is entitled to *in forma pauperis* status would force it to confront "difficult issues of policy and administration." *Ante,* at 724. Far from *avoiding* policy determinations, however, the Court effectively *engages* in policymaking by refusing to credit the legislative judgments that are implicit in the statutory language. Any reading of the phrase "unless the context indicates otherwise" that permits courts to override congressional policy judgments is in my view too broad. Congress has spoken, and we should give effect to its words.

III

Congress has created a rule of statutory construction (an association is a "person") and an exception to that rule (an association **732 is not a "person" if the "context indicates otherwise"), but the Court has permitted the exception to devour the rule. In deciding that an association is not a "person" for purposes of 28 U.S.C. § 1915(a), the Court effectively reads 1 U.S.C. § 1 as if the presumption ran the other way-as if the statute said that "in determining the meaning of any Act of Congress, unless the context indicates otherwise, the word 'person' does *not* include corporations, partnerships, and associations." While it might make sense as a *223 matter of policy to exclude associations and other artificial entities from the benefits of the *in forma pauperis* statute, I do not believe that Congress has done so.

I respectfully dissent.

U.S.Cal.,1993.
Rowland v. California Men's Colony, Unit II Men's Advisory Council
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656

Briefs and Other Related Documents (Back to top)

• 1992 WL 687915 (Oral Argument) Oral Argument (Oct. 06, 1992)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

113 S.Ct. 716 Page 16
506 U.S. 194, 113 S.Ct. 716, 61 USLW 4060, 121 L.Ed.2d 656
**(Cite as: 506 U.S. 194, 113 S.Ct. 716)**

- 1992 WL 515351 (Appellate Brief) RESPONDENT'S SUPPLEMENTAL BRIEF (Oct. 05, 1992)
- 1992 WL 515352 (Appellate Brief) PETITIONERS' SUPPLEMENTAL BRIEF (Sep. 04, 1992)
- 1992 WL 512239 (Appellate Brief) PETITIONERS' REPLY BRIEF ON THE MERITS (Jun. 10, 1992)
- 1992 WL 512238 (Appellate Brief) BRIEF FOR RESPONDENT (May. 28, 1992)
- 1992 WL 512240 (Appellate Brief) PETITIONERS' BRIEF ON THE MERITS (Apr. 10, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.